# EXHIBIT A



504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.)))**

**H**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter.  See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.  See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.  (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
TERRA PARTNERS, Plaintiff–Appellant
v.
RABO AGRIFINANCE, INCORPORATED; AG Acceptance Corporation, Defendants–Appellees.

No. 11–11166.
Dec. 21, 2012.

**Background:** Borrower filed state court action alleging that agricultural lender converted its property. After removal, the United States District Court for the Northern District of Texas, 2010 WL 3270225, 2011 WL 2413356, 2011 WL 5527292, granted lender's motions for summary judgment, and borrower appealed. Lender moved for sanctions and for injunction barring future litigation.

**Holdings:** The Court of Appeals held that:
(1) imposition of monetary sanction of $3,000 against borrower's authorized managing agent was warranted, and
(2) injunction was warranted to prevent agent from filing future litigation.

Affirmed; motions granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⬤⟶2840**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2837 Grounds
            170Ak2840 k. Frivolousness; particular cases. Most Cited Cases

**Federal Civil Procedure 170A ⬤⟶2847**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(F) On Appeal
         170Ak2847 k. Type and amount of sanction. Most Cited Cases

Borrower's authorized managing agent acted in bad faith in borrower's conversion action against lender, thus warranting imposition of monetary sanction of $3,000, by presenting patently frivolous legal argument that Court of Appeals' prior decisions were "legal nullities that are void ab initio" and threatening continued meritless litigation.

**[2] Injunction 212 ⬤⟶1170**

212 Injunction
   212IV Particular Subjects of Relief
      212IV(A) Courts and Actions in General
         212k1168 Abusive, Vexatious, or Harassing Litigation
            212k1170 k. Particular cases. Most Cited Cases

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.)))**

Injunction was warranted to prevent borrower's authorized managing agent from filing future litigation collaterally attacking Court of Appeals' prior decisions in lender's litigation against borrower on grounds not supported in existing law or reasonable argument for extension or modification of law, where agent stated that he intended to raise same void ab initio argument in future motions, petitions for writs of mandamus in state or federal court, motions to reopen bankruptcy cases for consideration of motions for contempt, bills of review in state court, and other collateral attacks on Court's prior judgments.

**\*289** Steven Eugene Clark, McDole, Kennedy & Williams, P.C., Dallas, TX, for Plaintiff–Appellant.

Barbara Whiten Balliette, William Thomas Reid, Esq., Reid Collins & Tsai, L.L.P., Joni Paul Kleinschmidt, Diamond McCarthy, L.L.P., Austin, TX, for Defendants–Appellees.

Appeal from the United States District Court for the Northern District of Texas, Amarillo, USDC No. 2:08–CV–194.

Before JOLLY, JONES, and GRAVES, Circuit Judges.

PER CURIAM: [FN*]

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**\*\*1** After reviewing the briefs, the relevant portions of the record, and the applicable law, we find no reversible error in the district court's three opinions granting summary judgment in favor of Defendants–Appellees Rabo Agrifinance, Inc. and Ag Acceptance Corporation. Summary judgment is AFFIRMED, essentially for the reasons given by the district court in its well-considered opinions.

In addition, Rabo Agrifinance, Inc. and Ag Acceptance Corporation's motion for monetary sanctions against would-be amicus Steve Veigel is GRANTED, and an injunction is GRANTED enjoining future litigation by Steve Veigel, Robert Veigel, Ella Marie Veigel, and their affiliates or related entities, including Terra Partners.

**\*290** I.

On September 20, 2012, Steve Veigel sought to file a *pro se* amicus brief in support of Terra Partners.[FN1] Steve Veigel has an obvious interest in this case. He is an authorized managing agent for Terra Partners, is a corporate officer for all four of the corporate partners that form Terra Partners, owns all shares in one of the corporate partners, and half of the shares in another. In his amicus brief, Steve Veigel asserts that prior decisions of this court "are legal nullities that are void *ab initio*." We have previously rejected his argument. *See Rabo Agrifinance, Inc. v. Veigel Farm Partners,* 328 Fed.Appx. 942, 943 (5th Cir.2009). The brief thus is frivolous.

> FN1. His motion for leave to file an out of time motion to file an amicus brief, an opposed motion to file an amicus brief, and an opposed motion to file an amicus brief in excess of the page limit were all denied. The amicus brief was filed months late and was 18,515 words, far exceeding the 7,000–word limit.

II.

A.

Rabo Agrifinance, Inc. and Ag Acceptance Corporation moved for sanctions against both Steve Veigel and Terra Partners. Although we do not impose monetary sanctions against Terra Partners,[FN2] we find

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.)))**

that Steve Veigel acted in bad faith and impose sanctions. *See Ferguson v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir.1986)* ("We may impose sanctions on appeal ... if necessary.").

> FN2. Rabo Agrifinance, Inc. and Ag Acceptance Corporation's motion for sanctions thus is DENIED with respect to monetary sanctions against Terra Partners.

[1] Federal courts have an inherent power "to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Scaife v. Associated Air Ctr., Inc., 100 F.3d 406, 411 (5th Cir.1996); see also Chambers v. NASCO, Inc., 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)* ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). The threshold for using our inherent powers is high, and we "must make a specific finding that the sanctioned party acted in 'bad faith,' " before imposing sanctions. *Maguire Oil Co. v. City of Houston, 143 F.3d 205, 209 (5th Cir.1998)* (quoting *Matta v. May, 118 F.3d 410, 413 (5th Cir.1997)*) (emphasis omitted). Steve Veigel's void ab initio argument was affirmatively rejected by this court, and his brief threatens future litigation premised on the same argument. *See Newby v. Enron Corp., 302 F.3d 295, 302 (5th Cir.2002)* ("[F]ederal courts also have the inherent power to impose sanctions against vexatious litigants."). Raising a patently frivolous legal argument and threatening continued meritless litigation is the definition of bad faith. Steve Veigel, therefore, is sanctioned in the amount of $3,000.

**B.**

**\*\*2** [2] In order to prevent Steve Veigel from continuing to raise the frivolous void ab initio argument, Rabo Agrifinance, Inc. and Ag Acceptance Corporation requested an injunction to prevent the filing of future litigation collaterally attacking this court's judgments.[FN3] We agree that an injunction is appropriate in this instance.

> FN3. Steve Veigel has apparently already raised the argument again in an October 9, 2012 letter submitted to a New Mexico state court, claiming that the case of *Rabo Agrifinance v. Terra XXI, 257 Fed.Appx. 732 (5th Cir.2007)*, was a legal nullity, void ab initio.

**\*291** As previously stated, we have the inherent power to impose sanctions, including an injunction, against litigants who use the legal system to harass their opponents through vexatious litigation. *See Newby, 302 F.3d at 302; see also Ferguson, 808 F.2d at 359* ("That his filings are *pro se* offers ... no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."). We recognize, however, that "injunction[s] against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Ferguson, 808 F.2d at 360.*

In this case, Steve Veigel stated that he intends to raise the same void ab initio argument in future Rule 60(b) motions; petitions for writs of mandamus in state or federal court; motions to reopen bankruptcy cases for consideration of motions for contempt; bills of review in state court; and other collateral attacks on the prior judgments of this court. His position is not supported in existing law and is not a reasonable argument to extend or modify the law, given that this court has already ruled on his argument. The future litigation he threatens would be repetitive, vexatious, previously resolved, and meritless. A narrowly-tailored injunction is an appropriate sanction to protect this court's judgments and to prevent the continued filing of vexatious litigation.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.)))**

It is therefore ORDERED:

No pleading, lawsuit, or other document in any federal court shall be filed by, or on behalf of, Steve Veigel, his affiliates or related entities, including Terra Partners, without first presenting the filing to the district court below to determine whether the issues contained in the filing have been previously decided. Furthermore, it is ORDERED that said Steve Veigel shall pay into the registry of this court the sum of three thousand dollars ($3,000) by and no later than January 4, 2013.

JUDGMENT AFFIRMED.

SANCTIONS AND INJUNCTION ORDERED.

C.A.5 (Tex.),2012.
Terra Partners v. Rabo Agrifinance, Inc.
504 Fed.Appx. 288, 2012 WL 6643163 (C.A.5 (Tex.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT B

No. 11-11166

# In the United States Court of Appeals For the Fifth Circuit

**TERRA PARTNERS,**

*Plaintiff-Appellant,*

**v.**

**RABO AGRIFINANCE, INC. AND AG ACCEPTANCE CORPORATION,**

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Northern District of Texas, Amarillo Division
Civil Action NO. 2:08-CV-000194-J
(Hon. Mary Lou Robinson)

**AMICUS CURIAE BRIEF OF STEVE VEIGEL
IN SUPPORT OF PLAINTIFF'S-APPELLANT'S APPEAL
SEEKING REVERSAL AND REMAND**

Steve Veigel
105 Quince Street
Hereford, Texas  79045
telephone: (806) 231-1009
e-mail: SVeig@aol.com

*pro se*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

FRAP RULE 29(c)(4) REQUIRED STATEMENT OF AMICUS' IDENTITY, INTERESTS, AND AUTHORITY TO FILE ............................................................ xii

FRAP RULE 29(c)(5) REQUIRED STATEMENT ................................................ xiii

FIFTH CIRCUIT RULE 29.2 REQUIRED SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES AND THEIR INTERESTS IN THE BRIEF ........................... xiii

SUMMARY AND BACKGROUND OF THE ARGUMENTS ........................................ 1

ARGUMENTS.................................................................................................... 9

I.  DFS'S AJ LIEN AND PURCHASE MONEY LIENS ARE THE ONLY LIENS TO SURVIVE CONFIRMATION OF XXI'S PLAN AND VFP'S PLAN, AS SUCH, APPELLEES' INTERESTS IN XXI'S ORIGINAL TEXAS PROPERTIES, XXI'S ORIGINAL NM PROPERTIES, THE 1½ SECTIONS, AND XXI'S AND VFP'S PERSONAL PROPERTY ARE LEGALLY NULL AND VOID *AB INITIO* AS ARE THE POST-CONFIRMATION JUDGMENTS IN FAVOR OF APPELLEES .............................. 9

    A.  XXI'S PLAN AND VFP'S PLAN SERVE AS *RES JUDICATA*, AND AS SUCH, JUDGMENTS BY NON-BANKRUPTCY COURTS THAT INCORRECTLY INTERPRET SUCH ARE LEGALLY NULL AND VOID AND CANNOT SUPPORT *RES JUDICATA* ..................................................... 9

    B.  ALL PRIOR JUDGMENTS FOR APPELLEES FOUNDED UPON ORIGINAL PRE-PETITION LIENS ARE LEGALLY NULL AND VOID .......... 25

    C.  ALL PRIOR JUDGMENTS FOR APPELLEES FOUNDED UPON ORIGINAL PRE-PETITION LOAN DOCUMENTS ARE LEGALLY NULL AND VOID........................................................................................ 28

    D.  FAILURE TO COMPLY WITH FED. R. BANKR. P. RULE 3001 AND RESULTING FRAUD ON THE BANKRUPTCY COURT IS A FATAL DEFECT TO CLAIMS THAT WERE TO BE ALLOWED FOR FAC, ASA, AND AAC ................................................................................ 40

    E.  THE VEIGELS' HOMESTEAD INTEREST ALSO SERVES AS A FUNDAMENTAL ERROR TO NULLIFY AND VOID PRIOR JUDGMENTS ...................................................................................... 46

II. APPELLEES CONTINUE TO PLAY FAST AND LOOSE WITH THE COURTS TO SUIT THE EXIGENCIES OF THEIR SHIFTING SELF INTERESTS REGARDING THEIR LEGAL STANDING .................................... 55

i

III. IF THE JUDGMENT IN RAF'S & AAC'S DECLARATORY JUDGMENT SUIT IS NOT VOID, THEN IT SERVES AS *RES JUDICATA* THAT XXI'S CONVEYANCE TO APPELLANT WAS FREE AND CLEAR OF ANY LIEN; HOWEVER, AAC'S ACQUISITION OF THE UNDIVIDED 75% INTEREST IN THE 1½ SECTIONS IN 2001 VIOLATED THE BANKRUPTCY STAYS, AND AS SUCH, AAC HAD NO LEGAL TITLE TO CONVEY TO XXI AS CONSIDERATION FOR THE SETTLEMENT OF THE BANKRUPTCY ADVERSARY PROCEEDING, AND CONSQUENTLY, AAC HAD NO VALID BASIS TO SUBSEQUENLTY FORECLOSE THEREON, DFS'S AJ LIEN DID NOT ATTACH, AND TITLE REMAINS IN AAC'S GRANTORS ........ 61

IV. APPELLEES' LACK LEGAL CAPACITY TO FILE COUNTERCLAIMS. ........... 66

CONCLUSION ................................................................................ 72

CERTIFICATE OF SERVICE .............................................................. 74

CERTIFICATE OF COMPLIANCE ....................................................... 75

ii

TABLE OF AUTHORITIES

## Cases

AG Acceptance Corp. v. Veigel, NO. 08-10144, 564 F.3d 695 (5th
  Cir. Apr. 1, 2009)...................................................................................xiii

Ag Acceptance Corp. v. Veigel, NO. 2:06-CV-272, 2007 WL
  6889358, 2007 U.S. Dist. LEXIS 63763, (N.D.Tex., Aug. 29,
  2007)...........................................................................................xiii, 20

Blumberg v. NSSI Liquidating Trust, 2009 WL 2998516
  (N.D.Tex. 2009).......................................................................................44

Celotex Corp. v. Edwards, 514 U.S. 300, 313 (Tex.1995)...........................13

Chae v. Schneider, 244 S.W.3d 425 (Tex.App.-Eastland 2007, no
  pet.) .......................................................................................................14

Coastal Liquids Transp., L.P. v. Harris Cty. Apprsl. Dist., 46
  S.W.3d 880 (Tex. 2001) .....................................................................67, 68

Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499
  (Tex. 1988) (per curiam) .........................................................................64

Curtis Sharp Custom Homes, Inc. v. Glover, 701 S.W.2d 24
  (Tex.App.-Dallas 1985, writ ref'd n.r.e.).................................................47

Dillard v. Duke, 107 S.W.2d 414 (Tex.Civ.App.—Waco 1937, no
  writ).....................................................................................................51, 53

Dollert v. Pratt-Hewit Oil Corporation, 179 S.W.2d 346
  (Tex.Civ.App.-San Antonio 1944, writ ref'd w.o.m.), cert.
  denied, 324 U.S. 853, 65 S.Ct. 713, 89 L.Ed. 1412 (1945)......................14

Easterline v. Bean, 49 S.W.2d 427 (Tex. 1932) ..........................................14

Eguia v. Eguia, --- S.W.3d ----, 2012 WL 1066022 (Tex.App.-
  Corpus Christi Mar 29, 2012)..................................................................15

Eubanks v. Fed. Deposit Ins. Corp., 977 F.2d 166 (5th Cir.1992)...............10

Faires v. Billman, 849 S.W.2d 455 (Tex.App.-Austin 1993, no
  writ).........................................................................................................14

Florida Dep't of Ins. v. Chase Bank of Tex., N.A., 274 F.3d 924
  (5th Cir.2001) ..........................................................................................59

Henderson v. Stalder, 287 F.3d 374 (5th Cir.2002)......................................59

In re Ahern Enter., 507 F.3d 817 (5th Cir. Nov. 6, 2007) ....21, 25, 26, 27, 28

iii

In re Atravasada Land & Cattle Inc., 388 B.R. 255 (Bankr. S.D.Tex.2008)............................................................................... 64

In re Benjamin Coal Co., 978 F.2d 823 (3d Cir. 1992) ................................ 16

In re Birting Fisheries, Inc., 300 B.R. 489 (9th Cir.BAP 2003).................. 16

In re Burton Securities, 129 F.3d 607 (5th Cir.1997)............................ 21, 25

In re Cano, 410 B.R. 506 (Bankr.S.D.Tex.2009) ......................................... 29

In re Coho Resources, Inc., 345 F.3d 338 (5th Cir. 2003)........................... 65

In re Cruz, 254 B.R. 801 (Bankr.S.D.N.Y.2000)......................................... 16

In re Dow Corning, Corp., 456 F.3d 668 (6th Cir.2006)............................. 29

In re Drinks Unique, Not Reported in B.R., 2010 WL 3491184 (Bankr. E.D.Tex. 2010) ............................................................................ 21

In re Egleston, 448 F.3d 803 (5th Cir.2006) ................................................ 15

In re Eskew, 233 B.R. 708 (Bankr. W.D. Tex. 1998).................................... 50

In re Gervin, 300 Fed.Appx. 293 (5th Cir.2008) ......................................... 15

In re Gruntz, 202 F.3d 1074 (9th Cir. en Banc 2000)............................ 13, 16

In re Gurrola, 328 B.R. 158 (9th Cir.BAP 2005)......................................... 16

In re Hamilton, 540 F.3d 367 (6th Cir.2008)................................................ 15

In re Johnson, 2010 WL 3491187 (Bankr.N.D.Tex. Sep 02, 2010)............. 54

In re Kim, 2011 WL 2708985 (Bankr.W.D.Tex.2011) ................................ 15

In re McGhan, 288 F.3d 1172 (9th Cir.2002)............................................... 16

In re Moody, 77 B.R. 580 (S.D.Tex.1987) ................................................... 47

In re Pavelich, 229 B.R. 777 (9th Cir.BAP 1999) ....................................... 15

In re Perry, 345 F.3d 303 (5th Cir. 2003) ...................................48, 49, 51, 53

In re Ritter, 2009 Bankr. LEXIS 954 (Bankr. E.D. Tex. Mar.26 2009)......................................................................................................... 55

In re Sanchez. 372 B.R. 289 (Bankr. S.D. Tex. 2007)..................... 18, 40, 65

In re Stoker, 2010 Bankr. LEXIS 782 (S.D. Tex. 2010) (Bankr. S.D.Tex.2010)............................................................................................ 65

In re Stratford of Tex., Inc., 635 F.2d 365 (5th Cir.1981)........................... 29

In re Talbot, 124 F.3d 1201 (10th Cir.1997) ............................................... 29

In re Troutman Enters., Inc., 253 B.R. 8 (6th Cir. BAP 2000)..................... 16

Jernigan v. Bank One, Texas, N.A., 803 S.W.2d 774 (Tex.App.-
    Houston [14th Dist.] 1991, no writ) ............................................ 60

Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370
    (Wis.1940) ................................................................................ 13

Kokkonen v. Guardian Life Insurance Company of America, 511
    U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ................................. 59

Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d
    1072 (2d Cir.1972) .................................................................... 43

Kutka v. Temporaries, Inc., 568 F.Supp. 1527 (S.D.Tex. 1983)................. 72

Laster v. First Huntsville Properties Co., 826 S.W.2d 125
    (Tex.1991) ............................................................................... 55

Mallou v. Payne & Vendig, 750 S.W.2d 251 (Tex. Ct. App.-Dallas
    1988, no writ)....................................................................... 47, 52

Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d
    798 (2d Cir.1960) ..................................................................... 44

Matter of Camp, 59 F.3d 548 (5th Cir.(Tex.) 1995)................................... 59

Mosher Steel & Mach. Co. v. Nash, 6 S.W.2d 158 (Tex.Civ.App.-
    Dallas 1928, writ dism'd w.o.j.).................................................. 48

Ontiveros v. Mbank Houston, N.A., 751 F.Supp. 128
    (S.D.Tex.1990) ........................................................................ 50

Ortega v. LPP Mortgage, Ltd., 160 S.W.3d 596 (Tex.App.Corpus
    Christi 2005, pet. denied) ......................................................... 54

Patterson v. First Nat'l Bank of Lake Jackson, 921 S.W.2d 240
    (Tex.App.-Houston [14th Dist.] 1996, no writ) ........................... 52

Pirtle v. Gregory, 629 S.W.2d 919 (Tex.1982)....................................... 46

Poe v. City of Humble, Texas, 554 F.Supp. 233 (S.D.Tex.1983) ............... 60

Rabo Agrifinance Inc. v. Terra XXI Ltd., NO. 07-10102, 257
    Fed.Appx. 732 (5th Cir. Dec. 7, 2007) (per curiam)
    (unpublished)......................................................................... xii

Rabo Agrifinance Inc., an Iowa corporation, and Ag Acceptance
    Corporation v. Hereford State Bank, NO. 2:08-CV-122-J,
    unpublished order, PACER Doc. 8 (N.D.Tex., Nov. 30, 2009)............... xiv

v

Rabo AgriFinance v. Terra XXI, Ltd., NO. 2:05-CV-314-J, Not
    Reported in F.Supp.2d, 2006 WL 1683419 (N.D.Tex., June 14,
    2006) ..................................................................................................... xii

Rabo AgriFinance v. Terra XXI, Ltd., NO. 2:05-CV-314-J, Not
    Reported in F.Supp.2d, 2006 WL 2828748 (N.D.Tex., Oct. 4,
    2006) ............................................................................................... xii, 18

Rabo AgriFinance v. Veigel Farm Partners, NO. 2:05-CV-243-J,
    Not Reported in F.Supp.2d, 2006 WL 1540765 (N.D.Tex., June
    05, 2006) ............................................................................................... xii

Rabo Agrifinance, Inc. and Ag Acceptance Corporation v. Terra
    XXI Ltd., Veigel Farm Partners, Veigel Farms, Inc., Grain
    Central Station, Inc., Veigel Grain Company, Robert W. Veigel,
    Ella Marie Veigel, and Steve Veigel,  NO. 2:06-000153-J,
    PACER Doc. 10 (N.D.Tex. July 24, 2006) (unpub. order) ..................... xiii

Rabo Agrifinance, Inc. and Ag Acceptance Corporation v. Terra
    XXI Ltd., Veigel Farm Partners, Veigel Farms, Inc., Grain
    Central Station, Inc., Veigel Grain Company, Robert W. Veigel,
    Ella Marie Veigel, and Steve Veigel,  NO. 2:06-000153-J,
    PACER Doc. 7 (N.D.Tex. June 23, 2006) (unpub. order) ........................ xii

Rabo Agrifinance, Inc. v. Terra XXI Ltd., NO. 2:06-CV-153, 2007
    WL 2446278, (N.D.Tex., Aug. 29, 2007) ................................................ xiii

Rabo Agrifinance, Inc. v. Terra XXI, Ltd. et. al., NO. 30,286, 274
    P.3d 127, 2012-NMCA-038 (N.M.App. Jan 12, 2012, NM NO.
    33449 cert. denied (Mar 07, 2012)) ............................................... xv, 18, 22

Rabo Agrifinance, Inc. v. Terra XXI, Ltd., NO. 08–10143, 583
    F.3d 348 (5th Cir. Sep. 22, 2009) ............................................................ xiii

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 08-10661,
    PACER Doc. 0051608399 (5th Cir. Nov. 24, 2008) (unpub.
    order) ....................................................................................................... xii

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 08-10817,
    328 Fed.Appx. 942 (5th Cir. May 15, 2009) (unpublished) ...................... xii

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 2:05-CV-243,
    2008 WL 2746996 (N.D.Tex. Jul 15, 2008) (dis'd w.o.j) ......................... xii

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 2:05-CV-243,
    2008 WL 341425, (N.D.Tex., Feb. 7, 2008) .................................. xii, 3, 19

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 2:05-CV-
    243-J, Not Reported in F.Supp.2d, 2008 WL 3992060 (N.D.Tex.
    Aug 20, 2008) ....................................................................................... xii

Rabo Agrifinance, Inc. v. Veigel Farm Partners, NO. 2:05-CV-
    243-J, PACER Doc. 122 (N.D.Tex.. May 15, 2009) (unpub.
    memo op.) ............................................................................................. xii

Republic Supply v. Shoaf, 815 F.2d 1046 (5th Cir.1987) ........................... 12

Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978) ........................... 43

Salomon v. Lesay, 369 S.W.3d 540 (Tex.App.-Hous. (1 Dist.)
    2012) ..................................................................................................... 49

Shipley v. Unifund CCR Partners, 331 S.W.3d 27 (Tex.App.-Waco
    2010, no pet.) ........................................................................................ 60

SMS Fin., L.L.C. v. ABCO Homes, Inc., 167 F.3d 235 (5th
    Cir.1999) ............................................................................................... 60

Southern Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.,
    229 B.R. 119 (E.D.Tex. 1999) .............................................................. 40

Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (Ill.
    1938) ..................................................................................................... 10

Terra Partners v. Rabo Agrifinance, Inc., No. 2:08-CV-194-J, 2010
    WL 3270225 (N.D.Tex. Aug 18, 2010) ............................................ xv, 9

Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al., NO. 07-04-
    0325-CV, 2004 WL 2559940 (Tex. App.-Amarillo Nov. 10.
    2004, reh. overruled (12/1/2004), Tex. NO. 05-0061 pet. dism'd
    w.o.j. (4/8/2005), reh. den. (6/24/2005)) (mem. op.) (not
    designated for publication) ..................................................................... x

Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al., NO. 2:04-
    CV-043-J, Not Reported in F.Supp.2d, unpublished order,
    PACER Doc. 20 (N.D.Tex., Mar. 16, 2004) ........................................... x

Terra XXI Ltd. v. AG Acceptance Corp., NO. 07–07–0374–CV,
    Not Reported in S.W.3d, 2009 WL 2168741 (Tex.App. July 21,
    2009, reh overruled (10/7/2009), Tex. NO. 09-0979 pet. denied
    (3/5/2010) reh pet denied (6/18/2010), US NO. 10-380 cert.
    denied 131 S.Ct. 436, 178 L.Ed.2d 324, 79 USLW 3149, 79
    USLW 3241, 79 USLW 3245 (U.S.Tex. 10/18/2010) .............................. xi

Terra XXI, Ltd. v. AG Acceptance Corp., NO. 07-06-0419-CV,
    280 S.W.3d 414 (Tex. App.-Amarillo Oct. 31, 2008, reh.
    overruled (12/17/2008), Tex. NO. 09-0071 pet. denied
    (6/19/2009), reh. denied (9/4/2009)) ............................................................ x

Terra XXI, Ltd. v. Harmon, NO. 07-06-0193-CV, 279 S.W.3d 781
    (Tex.App.-Amarillo, July 16, 2007, reh. overruled (10/4/2007),
    Tex. NO. 07-0966 pet. den. (5/16/2008)) ...................................................... xi

Texas Dep't of Transp. v. T. Brown Constructors, Inc., 947 S.W.2d
    655 (Tex.App.-Austin 1997, pet. denied) ...................................................... 46

Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of
    Pers. Mgmt., 220 F.3d 427 (5th Cir.2000) ............................................ 30, 31

Travelers Ins. Co. v. Joachim, 315 S.W.3d 860 (Tex.2010) ...................... 14

United States v. Smiley, 553 F.3d 1137 (8th Cir.2009) ............................... 44

Veigel Farm Partners and Terra XXI Ltd., v. Ag Services of
    America, Inc. and Ag Acceptance Corporation, NO. 01-02007-
    saf, PACER Doc. 132 (Bankr. N.D. Tex.-Amarillo Oct. 9, 2002)
    (unpub. memo. op. & order) ................................................................... x, 6

Veigel Farm Partners and Terra XXI Ltd., v. Ag Services of
    America, Inc. and Ag Acceptance Corporation, NO. 01-02007-
    saf, PACER Doc. 140 (Bankr. N.D. Tex.-Amarillo Oct. 25,
    2002) (unpub. agreed order) ....................................................................... x

Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343
    (1975) .......................................................................................................... 60

Williams v. White, 223 S.W.2d 278 (Tex.Civ.App.-San Antonio
    1949, writ ref'd) .......................................................................................... 14

Workman v. Bell, 227 F.3d 331 (6th Cir.2000) ............................................ 43

Yokogawa Corp. of America v. Skye Intern. Holdings, Inc., 159
    S.W.3d 266 (Tex.App.-Dallas 2005) ........................................................ 62

York v. State ___ S.W.3d ___, ___ (Tex. June 29, 2012)(NO. 09-
    0905) ........................................................................................................... 64

Zale Corporation v. Feld, 62 F.3d 746 (5th Cir. 1995) ........................ 31, 34

**Statutes**

§48-10-3(H)(1) NMSA 1978 ........................................................................ 22

11 U.S.C. § 105 ................................................................................ 40, 45

11 U.S.C. § 350 ...................................................................................... 53

11 U.S.C. § 362 ................................................................................ 63, 64

11 U.S.C. § 524 ...................................................... 12, 13, 14, 29, 31, 34

11 U.S.C. § 1141 ...................................... 19, 21, 25, 26, 27, 28, 29

12 U.S.C. § 2001 .................................................................................... 33

12 U.S.C. § 2199 ............................................................................. 32, 33

12 U.S.C. § 2201 .................................................................................... 33

12 U.S.C. § 2202a .................................................................................. 33

12 U.S.C. § 2202d .................................................................................. 33

12 U.S.C. § 2219a .................................................................................. 33

Tex. Adm. Code § 3.36 .......................................................................... 68

Tex. Adm. Code § 3.38 .......................................................................... 68

Tex. Bus. & Com. Code § 24.002 ................................................... 21, 62

Tex. Bus. Org. Code § 9.051 ................................................................. 69

Tex. Bus. Org. Code § 9.201 ................................................................. 69

Tex. Fin. Code § 12.105 ......................................................................... 68

Tex. Fin. Code § 31.002 ......................................................................... 69

Tex. Fin. Code § 31.004 ......................................................................... 69

Tex. Fin. Code § 31.005 ......................................................................... 69

Tex. Fin. Code § 31.106 ......................................................................... 68

Tex. Fin. Code § 31.108 ......................................................................... 68

Tex. Fin. Code § 32.008 ......................................................................... 69

Tex. Fin. Code § 201.102 ................................................................. 68, 69

Tex. Prop. Code § 41.021 ...................................................................... 52

Tex. Prop. Code § 41.022 ...................................................................... 52

Tex. Prop. Code § 41.023 ...................................................................... 52

Tex. Prop. Code § 52.042 ................................................................. 14, 64

ix

## Other Authorities

69 FR 10908 ....................................................................................... 33

70 FR 18965 ....................................................................................... 33

Tex. Secretary of State Form 309 ............................................. 68, 70

Tex. Secretary of State Form 411 ............................................. 68, 70

Texas Real Estate Form Manual, 2001 ed. .............................. 22, 23

## Rules

Fed. R. App. P. Rule 29 ....................................................viii, ix, 75

Fed. R. Bankr. P. Rule 3001 ...................... 18, 40, 41, 42, 44, 45, 57

Fed. R. Bankr. P. Rule 5010 ............................................................ 54

Fed. R. Civ. P. Rule 12 ............................................................. 66, 69

Fed. R. Civ. P. Rule 17 .................................................................... 60

Fed. R. Civ. P. Rule 56 .................................................................... 69

Fed. R. Civ. P. Rule 60 ...................................................... xv, 8, 44

## Treatises

4 Collier on Bankruptcy ¶ 524.02[1] (Alan N. Resnick & Henry J.
    Sommer eds., 16th ed.) ............................................................ 16

## Regulations

12 CFR part 617 .............................................................................. 33

12 CFR § 614.4336 .......................................................................... 33

12 CFR § 614.4514 .......................................................................... 33

12 CFR § 617.7010 .................................................................... 32, 33

12 CFR § 617.7015 .......................................................................... 33

12 CFR § 617.7300 .......................................................................... 33

12 CFR § 617.7310 .......................................................................... 33

12 CFR § 617.7410 .......................................................................... 33

12 CFR § 617.7420 .......................................................................... 33

12 CFR § 617.7425 .......................................................................... 33

12 CFR § 617.7600 .......................................................................... 33

12 CFR § 617.7610 ........................................................................... 33

12 CFR § 617.7615 ........................................................................... 33

12 CFR § 618.8325 ........................................................................... 33

**Constitutional Provisions**

Tex. Const. art. XVI, § 50............................................................... 48

U.S. Const. art. III, § 2, cl. 1 ......................................................... 59

### FRAP RULE 29(c)(4) REQUIRED STATEMENT OF AMICUS' IDENTITY, INTERESTS, AND AUTHORITY TO FILE

1.　　Pursuant to Fed. R. App. P. 29 and Fifth Circuit Rule 29, STEVE VEIGEL, as an individual *pro se* amicus curiae, submits this amicus brief ("BRIEF") in the above styled case (the "APPEAL") in support of Plaintiff/Appellant, TERRA PARTNERS' ("APPELLANT") appeal seeking reversal and remand of the District Court's summary judgments in Cause No. 2:08-CV-000194-J (the "CASE") in favor of Defendant/Appellee, RABO AGRIFINANCE INC., ("RAF") and Defendant/Appellee, AG ACCEPTANCE CORPORATION ("AAC"). RAF and AAC will be referred together in the BRIEF as the "APPELLEES".

2.　　STEVE VEIGEL is not a party to, nor represented by counsel, in the CASE or APPEAL. However, he is an authorized managing agent for APPELLANT, serves as a corporate officer of all four of APPELLANT'S corporate partners, and owns all of the shares of one of APPELLANT'S corporate partners (*i.e.*, Burnett & Veigel, Inc.) and one-half of the shares of another (*i.e.*, Massey Kirk & Veigel, Inc.). In addition to STEVE VEIGEL'S interests in APPELLANT, he maintains business, investment, and inheritance interests as well as interests in prior, pending, and future litigation with APPELLEES in various individual, management, and fiduciary capacities. Steve VEIGEL'S identity and interests are set forth more fully at pages 6 – 39

of his motion ("MOTION") for leave to file this BRIEF and in diagrams of the families' interests attached as Exhibit 1 and ownership of entities attached as Exhibit 2 for the Court's convenience.

### FRAP RULE 29(c)(5) REQUIRED STATEMENT

3.    No party's or non-party's attorney authored or previewed the BRIEF in whole or in part.  No party, party's counsel, other non-party, or any non-party's counsel contributed money that was intended to fund preparation or submission of the BRIEF.  No one, other than STEVE VEIGEL, contributed money that was intended to fund preparation or submission of the BRIEF.

### FIFTH CIRCUIT RULE 29.2 REQUIRED SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES AND THEIR INTERESTS IN THE BRIEF

4.    As set forth more fully at pages 5 – 39 of the MOTION for leave to file this BRIEF, there are other named and unnamed parties in other prior,[1]

---

[1]    Prior litigation includes (note references in this BRIEF to PACER Docs. are to PACER filings in this CASE unless otherwise prefixed by another case number which the Court may take notice):

(a)    *In re: Veigel Farm Partners* NO. 00-20858-saf11 in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, *see* PACER Docs. 35-33, 35-35, 35-36, and 35-39 regarding VFP's confirmed Chapter 11 plan of reorganization ("VFP'S PLAN") collectively referred to herein as **VFP'S BANKRUPTCY CASE**;

(b)    *In re: Terra XXI Ltd.* NO. 00-20877-saf11 in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, *see* PACER Docs. 35-21, 35-23, 35-24, and 35-27 regarding XXI's confirmed plan ("XXI'S PLAN") and *see* Case No. 00-20877-bjh11 PACER Docs. 139 and 160 attached as Exhibits 4 and 5 regarding the denial of reopening XXI's BANKRUPTCY CASE in 2010-2011 in order to consider the merits of motions without prejudice to clarify and enforce XXI'S PLAN with sanctions collectively referred to herein as **XXI'S BANKRUPTCY CASE**;

(c)     *Veigel Farm Partners and Terra XXI Ltd., v. Ag Services of America, Inc. and Ag Acceptance Corporation*, NO. 01-02007-saf, PACER Doc. 132 (Bankr. N.D. Tex.-Amarillo 10/9/2002) (unpub. memo. op. & order) *see* PACER Doc. 42-44; *Veigel Farm Partners and Terra XXI Ltd., v. Ag Services of America, Inc. and Ag Acceptance Corporation*, NO. 01-02007-saf, PACER Doc. 140 (Bankr. N.D. Tex.-Amarillo 10/25/2002) (unpub. agreed order of dismissal); and *see* October 20, 2002 settlement (PACER Doc. 35-40), July 15, 2003 controlling bench ruling clarifying the October 20, 2002 settlement (PACER Doc. 35-41), and related unpub. order (PACER Doc. 35-42) collectively referred to herein as the **BANKRUPTCY ADVERSARY**;

(d)     *Ag Acceptance Corp. v. Terra XXI Ltd., Terra Partners, Veigel Farms Inc., Robert W. Veigel, and Ella Marie Veigel*, NO. 04-11557, unpublished order and judgment (Justice Court Precinct One, Deaf Smith County, Tex. 6/8/2004) (finding defendants guilty of forcible detainer) attached as Exhibit 6; aff'd in NO. CI-2006-04972, unpublished order and judgment (Deaf Smith County Court Tex., Hon. Roland Saul sitting by assignment, 10/12/2006) attached as Exhibit 7 aff'd by *Terra XXI, Ltd. v. AG Acceptance Corp.,* NO. 07-06-0419-CV, 280 S.W.3d 414 (Tex. App.-Amarillo 10/31/2008, reh. overruled (12/17/2008), Tex. NO. 09-0071 pet. denied (6/19/2009), reh. denied (9/4/2009)) (holding lack of jurisdiction to review forcible detainer action and affirming judgment for AAC on other issues) collectively referred to herein as **AAC'S EVICTION SUIT**;

(e)     *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court, Tex., 2/17/2004) (granting XXI's *et. al.*'s motion for temporary restraining order regarding AAC'S EVICTION SUIT) attached as Exhibit 8; *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. 2:04-CV-043-J, Not Reported in F.Supp.2d, unpublished order, PACER Doc. 20 (N.D.Tex., 3/16/2004) (granting XXI's *et. al.*'s motion to remand to NO. CI-04B-011) attached as Exhibit 9; *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 5/24/2004) (denial of XXI's *et. al.*'s motion for temporary injunction) attached as Exhibit 10 aff'd by *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. 07-04-0325-CV, 2004 WL 2559940 (Tex. App.-Amarillo 11/10/2004, reh. overruled (12/1/2004), Tex. NO. 05-0061 pet. dism'd w.o.j. (4/8/2005), reh. den. (6/24/2005)) (mem. op.) (not designated for publication) (affirming district court's denial of injunctive relief against AAC's forcible detainer action **even if evidence supported nullification of AAC's original deed of trust and foreclosure sale** of XXI'S ORIGINAL TEXAS PROPERTIES); *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 2/8/2006) (**1st summary judgment upholding AAC's Sep. 2, 2003 non-judicial foreclosure of XXI'S ORIGINAL TEXAS PROPERTIES**) PACER Doc. 10-13; *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 3/5/2006) (clarifying 1st partial summary judgment that XXI's *et. al.*'s claims of wrongful foreclosure by breach of contract was not dismissed) attached as Exhibit 12; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished summary judgment (222nd District Court Tex.,

8/1/2006) (granting in part AAC's and RAF's motion regarding XXI's *et. al.'s* claims of fraudulent inducement and usury, but denying AAC's and RAF's motion regarding XXI's *et. al.'s* claims for breach of settlement) PACER Doc. 10-14; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished summary judgment memo (222nd District Court Tex., 8/29/2006) (denying XXI's *et. al.'s* motion for summary judgment regarding limitations and granting AAC's and RAF's motion for summary judgment regarding limitations) attached as Exhibit 13; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished summary judgment (222nd District Court Tex., 10/3/2006) (duplicating 8/1/2006 judgment *again* granting in part AAC's and RAF's motion regarding XXI's *et. al.'s* claims of fraudulent inducement and usury, but denying AAC's and RAF's motion regarding XXI's *et. al.'s* claims for breach of settlement) attached as Exhibit 14; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished summary judgment (222nd District Court Tex., 3/2/2007) (granting in part AAC's and RAF's motion regarding XXI's *et. al.'s* bankruptcy adversary claims, but denying AAC's and RAF's motion regarding XXI's *et. al.'s* claims regarding breach of contract lost profits, wrongful acceleration and foreclosure) attached as Exhibit 15; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 3/5/2007) (granting AAC's and RAF's motion to non-suit is sole counterclaim for attorney fees) attached as Exhibit 16; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished summary judgment (222nd District Court Tex., 3/14/2007) (granting in part AAC's and RAF's motion regarding XXI's *et. al.'s* claims of usury, DTPA, related to guarantees, tortious interference, and accounting but denying AAC's and RAF's motion regarding XXI's *et. al.'s* claims for wrongful lien filings) PACER Doc. 10-4; *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 4/4/2007) (denying XXI's *et. al.* motion regarding AAC's and RAF's affirmative defenses) attached as Exhibit 17; aff'd by *Terra XXI Ltd. et. al. v. Ag Acceptance Corporation. et. al.,* NO. CI-04B-011, unpublished final judgment (222nd District Court Tex., 5/31/2007, new trial denied (8/14/2007)) (judgment for AAC and RAF on all matters) PACER 10-3 aff'd by *Terra XXI Ltd. v. AG Acceptance Corp.,* NO. 07–07–0374–CV, Not Reported in S.W.3d, 2009 WL 2168741 (Tex.App. 7/21/2009, reh overruled (10/7/2009), Tex. NO. 09-0979 pet. denied (3/5/2010) reh pet denied (6/18/2010), US NO. 10-380 cert. denied 131 S.Ct. 436, 178 L.Ed.2d 324, 79 USLW 3149, 79 USLW 3241, 79 USLW 3245 (U.S.Tex. 10/18/2010); and *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex., 2/9/2006) (after 1st summary judgment for substitute trustee of AAC's non-judicial foreclosure of XXI's ORIGINAL TEXAS PROPERTIES, severing claims against Harmon into Cause NO. CI-06B-015 in 222nd District Court Tex.) attached as Exhibit 11 aff'd by *Terra XXI, Ltd. v. Harmon,* NO. 07-06-0193-CV, 279 S.W.3d 781 (Tex.App.-Amarillo, July 16, 2007, reh. overruled (10/4/2007), Tex. NO. 07-0966 pet. den. (5/16/2008)) collectively referred to herein as the **STATE COURT WRONGFUL FORECLOSURE SUIT;**

(f)      *Rabo AgriFinance v. Veigel Farm Partners*, NO. 2:05-CV-243-J, Not Reported in F.Supp.2d, 2006 WL 1540765 (N.D.Tex., 6/5/2006) (granting XXI's *et. al.*'s motion for abstention because interlocutory 1st summary judgment not severed in State Court Wrongful Foreclosure Suit); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 2:05-CV-243, 2008 WL 341425, (N.D.Tex., 2/7/2008) (summary judgment for RAF on deficiency on the four original notes given to Ag Services of America, Inc. owing after AAC's non-judicial foreclosure of XXI's Original Texas Properties); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 2:05-CV-243-J, Not Reported in F.Supp.2d, 2008 WL 3992060 (N.D.Tex. 8/20/2008) (RAF's motion for attorney fees granted in part and denied in part); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 2:05-CV-243, 2008 WL 2746996 (N.D.Tex. 7/15/2008) (denying defendants' motion to extend time to file appeal) appeal dis'd w.o.j by *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 08-10661, PACER Doc. 0051608399 (5th Cir. 11/24/2008) (unpub. order) attached as Exhibit 18; and *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 2:05-CV-243-J, PACER Doc. 122 (N.D.Tex. 7/28/2008) (unpub. memo op.) (denying defendants' FRCP Rule 60(b)(4) motion) attached as Exhibit 19 aff'd by *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, NO. 08-10817, 328 Fed.Appx. 942 (5th Cir. 5/15/2009) (unpublished); collectively referred to herein as **RAF's Deficiency Suit on ASA's Original Notes** instead of the "Deficiency Suit" or "Second Lien Suit" which is a misnomer;

(g)      *Rabo AgriFinance v. Terra XXI, Ltd.*, NO. 2:05-CV-314-J, Not Reported in F.Supp.2d, 2006 WL 1683419 (N.D.Tex., 6/14/2006) (denying defendants' motion for abstention pending final judgment in the State Court Wrongful Foreclosure Suit); and *Rabo AgriFinance v. Terra XXI, Ltd.*, NO. 2:05-CV-314-J, Not Reported in F.Supp.2d, 2006 WL 2828748 (N.D.Tex., 10/4/2006) (awarding RAF only *in personam* judgment on the two notes originally given to the Farm Credit Bank of Texas) aff'm by *Rabo Agrifinance Inc. v. Terra XXI Ltd.*, NO. 07-10102, 257 Fed.Appx. 732 (5th Cir. 12/7/2007) (per curiam) (unpublished) collectively referred to herein as **RAF's Suit on FCBT's Original Notes** instead of the "First Lien Suit" which is a misnomer;

(h)      *Rabo Agrifinance, Inc. v. Terra XXI Ltd., Veigel Farm Partners, Veigel Farms, Inc., Grain Central Station, Inc., Veigel Grain Company, Robert W. Veigel, Ella Marie Veigel, and Steve Veigel*, NO. CI-06F-057, unpublished order (222nd District Court, Tex. 6/9/2006) (granting plaintiff a temporary restraining order prohibiting the damaging or removal of personal property from Sections 21, 22, 39, 40, 42, 59, 60, 61, and 62 Blk. K-4, Deaf Smith County Texas) PACER Doc. 65-62; *Rabo Agrifinance, Inc. and Ag Acceptance Corporation v. Terra XXI Ltd., Veigel Farm Partners, Veigel Farms, Inc., Grain Central Station, Inc., Veigel Grain Company, Robert W. Veigel, Ella Marie Veigel, and Steve Veigel*, NO. 2:06-000153-J, PACER Doc. 7 (N.D.Tex. 6/23/2006) (unpub. order) (extending the temporary restraining order prohibiting the damaging or removal of personal property from Sections 21, 22, 39, 40, 42, 59, 60, 61, and 62 Blk. K-4, Deaf Smith County Texas) PACER Doc. 35-63; *Rabo Agrifinance, Inc. and Ag Acceptance Corporation v. Terra XXI Ltd., Veigel Farm Partners, Veigel Farms,*

*Inc., Grain Central Station, Inc., Veigel Grain Company, Robert W. Veigel, Ella Marie Veigel, and Steve Veigel,* NO. 2:06-000153-J, PACER Doc. 10 (N.D.Tex. 7/24/2006) (unpub. order) (temporary injunction prohibiting the damaging or removal of personal property from Sections 21, 22, 39, 40, 42, 59, 60, 61, and 62 Blk. K-4, Deaf Smith County Texas) PACER Doc. 35-65; and *Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, NO. 2:06-CV-153, 2007 WL 2446278, (N.D.Tex., 8/29/2007) (judgment, in part, for APPELLANT regarding subrogation to DFS'S JUDGMENT and judgment, in part, for APPELLEES regarding personal property subject to judicial sale) aff'm by *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, NO. 08–10143, 583 F.3d 348 (5th Cir. 9/22/2009) (affirming judgment for APPELLEES as modified regarding basis for attorney fees) collectively referred to herein as the **EQUIPMENT SUIT**;

(i)     *Ag Acceptance Corp. v. Veigel,* NO. 2:06-CV-272, 2007 WL 6889358, 2007 U.S. Dist. LEXIS 63763, (N.D.Tex., 8/29/2007) (declaratory judgment, in part, for APPELLEES regarding THE 1½ SECTIONS) aff'd in part by *AG Acceptance Corp. v. Veigel,* NO. 08–10144, 564 F.3d 695 (5th Cir. 4/1/2009) (reversing judgment for attorney fees for APPELLEES, but affirming declaratory judgments for APPELLEES) collectively referred to herein as **RAF'S & AAC'S DECLARATORY JUDGMENT SUIT** instead of the "Partition Suit" which is somewhat of a misnomer;

(j)     *Ag Acceptance Corporation v. Terra Partners, Robert W. Veigel, and Brent Harrison, in His Capacity as Sheriff of Deaf Smith County, Texas,* NO. CI-06K-166, unpublished order (222nd District Court Tex., 11/27/2006) (granting AAC's motion for temporary restraining order concerning execution on writ of execution on DFS's AJ LIEN) attached as Exhibit 20; and *Ag Acceptance Corporation v. Terra Partners, Robert W. Veigel, and Brent Harrison, in His Capacity as Sheriff of Deaf Smith County, Texas,* NO. CI-06K-166, unpublished order (222nd District Court Tex., 4/23/2008) (denying Robert W. Veigel's motion for leave, granting AAC's motion for non-suit of all claims except granting AAC's motion as to quashal of expired writ concerning execution on writ of execution on DFS'S AJ LIEN) PACER Doc. 129-25 collectively referred to herein as **AAC'S SUIT TO QUASH WRIT ON DFS'S AJ LIEN**;

(k)     *James Friemel and Melanie Friemel, v. Ag Acceptance Corporation and Terra Partners,* NO. CI-07C-24, unpublished order (222nd District Court Tex., 6/4/2007) (granting Friemels' request for a temporary restraining order regarding harvesting APPELLANT'S wheat and depositing proceeds in Court's registry) attached as Exhibit 21; *James Friemel and Melanie Friemel, v. Ag Acceptance Corporation and Terra Partners; and Rabo Agrifinance Inc., Intervenor,* NO. CI-07C-24, unpublished order (222nd District Court Tex., 6/21/2007) (agreed order regarding harvesting and sale of APPELLANT'S wheat and depositing proceeds in Court's registry) attached as Exhibit 22; *James Friemel and Melanie Friemel, v. Ag Acceptance Corporation and Terra Partners; and Rabo Agrifinance Inc., Intervenor,* NO. CI-07C-24, unpublished order (222nd District Court Tex., 7/16/2007) (dismissing Friemels' claims after settlement) attached as Exhibit 23; *James Friemel and Melanie Friemel, v. Ag Acceptance Corporation and Terra*

pending,[2] and likely future[3] litigation involving AAC and/or RAF which

*Partners; and Rabo Agrifinance Inc., Intervenor,* NO. CI-07C-24, unpublished order (222nd District Court Tex., 12/18/2007) (injunction enjoining Appellant or its agents from entering upon most of XXI's ORIGINAL TEXAS PROPERTIES) attached as Exhibit 24; and *James Friemel and Melanie Friemel, v. Ag Acceptance Corporation and Terra Partners; and Rabo Agrifinance Inc., Intervenor,* NO. CI-07C-24, unpublished order (222nd District Court Tex., 11/18/2008) (agreed order pursuant to 11/6/2008 settlement at trial) PACER DOC. 27-4 collectively referred to herein as the **FRIEMEL SUIT**;

(l)    *Rabo Agrifinance Inc. and Ag Acceptance Corporation v. Terra XXI Ltd. and Veigel Farms, Inc.,* NO. CI-07K-192, unpublished order (222nd District Court Tex., 11/28/2007) (default deficiency judgment against XXI and VFI severed from RAF's & AAC's CRP SUIT) attached as Exhibit 25 referred to herein as the **TEXAS DEFICIENCY SUIT ON ASA'S & AAC'S NOTE**; and

(m)    *Rabo Agrifinance Inc., an Iowa corporation, and Ag Acceptance Corporation v. Hereford State Bank,* NO. 2:08-CV-122-J, unpublished order, PACER Doc. 8 (N.D.Tex., 11/30/2009) (granting APPELLEES' motion to dismiss without prejudice) attached as Exhibit 26 referred to herein as **RAF's & AAC's GARNISHMENT SUIT.**

[2]    Pending litigation, other than this CASE, includes:

(a)    *Ag Services of America, Inc., as servicer for Ag Acceptance Corporation v. Bob Veigel Inc., Bob Veigel, Steve Veigel, Inc., Steve Veigel, Vicki Veigel Inc., Veigel Cattle Company, Grain Central Station Inc., d/b/a Veigel Grain Company, Veigel Farms, Inc., and Veigel-Kirk, Inc.,* NO. CI-02A-006, unpublished order (222nd District Court, Tex., 10/29/2003) (granting plaintiff's motion to non-suit all claims against defendants without prejudice pursuant to 8/4/2003 order in BANKRUPTCY ADVERSARY without affecting defendants' counterclaims) attached as Exhibit 27 referred to herein as **GUARANTORS' COUNTERCLAIM SUIT**;

(b)    *Rabo Agrifinance Inc. and Ag Acceptance Corporation v. Veigel Farm Partners, a partnership, and its partners Veigel Cattle Company, Bob Veigel, Inc., Steve Veigel, Inc., Veigel-Kirk Inc., and Vicky* [sic] *Veigel, Inc., and Terra Partners, a Partnership, and its partners, Burnett & Veigel, Inc., Williams & Veigel, Inc., Kirk & Veigel, Inc., and Massey, Kirk & Veigel, Inc.* filed as Cause NO. CI-07D-038 in the 222nd District Court in and for Deaf Smith County, Texas referred to herein as **RAF's & AAC's CRP SUIT**;

(c)    *Rabo Agrifinance, Inc. v. Terra XXI, Ltd. et. al.,* NO. D-1010-CV-200700111, unpublished order (10th District Court NM, Hon. Drew D. Tatum presiding on assignment, 2/1/2010) (summary judgment based on Amended Decision Letter dated 10/30/2009 (Case No. 00-20877-bjh-11 PACER Doc. 154) attached as Exhibit 28 granting in part and denying in part RAF's motion for summary judgment for judicial foreclosure on XXI's ORIGINAL NM PROPERTIES) (Case No. 00-20877-bjh-11 PACER Doc. 154-1) attached as Exhibit 29 affirmed

xviii

may have an interest affected by the BRIEF particularly as it relates to

determination of legal title to XXI'S ORIGINAL TEXAS PROPERTIES,[4] XXI'S

> in part, reversed in part, and remanded regarding RAF's judicial foreclosure by
> *Rabo Agrifinance, Inc. v. Terra XXI, Ltd. et. al.*, NO. 30,286, 274 P.3d 127, 2012-
> NMCA-038 (N.M.App. 1/12/2012, NM NO. 33449 cert. denied (3/7/2012))
> referred to collectively herein as **RAF'S NM FORECLOSURE SUIT**; and
>
> (d)      *Ag Acceptance Corporation, Rabo Agrifinance, Inc. v. Terra XXI Ltd.,*
> *Terra Partners, Robert W. Veigel, and Ella Marie Veigel*, NO. 08-12460,
> unpublished judgment (Justice Court for Precinct One in Deaf Smith County,
> Tex., 4/17/2008) (default judgment against XXI and APPELLANT and directed
> verdict for APPELLEES, - *de nova* appeal to County Court pending subject to the
> "carve out" in the Friemel Settlement) attached as Exhibit 30 referred to herein as
> **RAF'S & AAC'S EVICTION SUIT ON THE 1½ SECTIONS.**

[3]   For example, potential Fed. R. Civ. P. Rule 60(b) motion(s); petition(s) for writ of
mandamus in state or federal court; motion(s) to reopen XXI's and/or VFP's
bankruptcy cases for considerations of motion(s) for contempt; bill(s) of review in
state court; and/or other collateral attack(s) on related void judgments.

[4]   Previously, the property constituting XXI'S ORIGINAL TEXAS PROPERTIES (which
Terra XXI Ltd. ("XXI") granted three deeds of trust and which AAC non-judicially
foreclosed on September 2, 2003 pursuant to its original *3rd* lien deed of trust record of
record as instrument No. 98-125*4* in the Official Public Records of Deaf Smith
County, Texas) has sometimes been inaccurately and inconsistently referred to as the
"Big Farm" which has lead to confusion and judicial errors.  For example, the District
Court's first partial summary judgment in this CASE stated "*This case involves Section*
*21, 22, 39, 40, 42, 59, 60, 61 and 62 in Block K4, Deaf Smith County, Texas, which*
*will be referred to as "The Farms." Section 59 and the east one-half of Section 60 in*
*Block 4, Deaf Smith County, Texas, will be referred to as "the 960 Acres." The*
*remainder is referred to as the "Big Farm.""  Terra Partners v. Rabo Agrifinance,*
*Inc.*, No. 2:08-CV-194-J, 2010 WL 3270225 *1 (N.D.Tex. 8/18/2010). **However, the**
**District Court is again in error as it fails** (as it did in the EQUIPMENT SUIT with
regards to the fixtures and personal property located thereon but not considered by the
District Court) **to include or address approximately 1,078.36 acres consisting of**
**the N 438.36 acres of 75 of Blk. K-4, the S/2 of Section 26 T3N R1E Capitol**
**Syndicate Subdivision, and the N/2 of Section 35 T3N R1E Capitol Syndicate**
**Subdivision all in Deaf Smith County, Texas which also make up XXI'S**
**ORIGINAL TEXAS PROPERTIES.**
In an attempt to avoid such continued confusion and to be factually correct, this BRIEF
will refer to all of the properties that AAC non-judicially foreclosed on September 2,
2003 as XXI'S ORIGINAL TEXAS PROPERTIES which consists of approximately
5,622.88 acres identified by the U.S.D.A. Farm Service Agency ("FSA") by Farm
Serial Number ("FSN") in 2006 as four "farms" 1) Sections 21 except the NW/4
thereof, 22, W/2 of 60, 61, and 62 of Blk. K-4 Deaf Smith County identified by the

ORIGINAL NM PROPERTIES,[5] and THE 1½ SECTIONS.[6] These parties include named parties Terra XXI Ltd. and its general partner Veigel Cattle Company; Veigel Farm Partners d/b/a Veigel Partners and its general partners Bob Veigel, Inc., Steve Veigel Inc., Veigel-Kirk, Inc., and Vicki Veigel, Inc.; Veigel Farms Inc.; Grand Central Station Inc., d/b/a Veigel Grain Company; Robert "Bob" W. Veigel; Ella Marie Williams Veigel; Steve Veigel; and APPELLANT and its general partners Williams & Veigel, Inc., Burnett & Veigel, Inc., Kirk & Veigel, Inc., and Massey Kirk & Veigel, Inc. These parties also include parties who are not named parties in any litigation with APPELLEES, but who directly or indirectly hold an investment, management, fiduciary, beneficiary, and/or inheritance interest in one or more parties named in the litigation including, but not limited to Bill and Holly Veigel Kirk, Jeff and Vicki Veigel Massey, James and Dorothy Veigel

---

FSA as FSN 2477; 2) Sections 39, 40, 42 except the NW 5.0 acres thereof, and the N 438.36 acres of 75 of Blk. K-4 Deaf Smith County indentified by the FSA as FSN 1872; 3) S/2 of Section 26 T3N R1E Capitol Syndicate Subdivision of Deaf Smith County indentified by the FSA as FSN 300; and 4) N/2 of Section 35 T3N R1E Capitol Syndicate Subdivision of Deaf Smith County indentified by the FSA as FSN 470. For reference, *see* Exhibit 3 attached hereto.

[5] XXI's ORIGINAL NM PROPERTIES, consists of XXI's interests in approximately 8,478.4 deeded acres in various sections in Quay and Guadalupe Counties, New Mexico which XXI granted three mortgages including the original 1st lien mortgage to the Farm Credit Bank of Texas which RAF is currently seeking to judicially foreclose in RAF's NM FORECLOSURE SUIT.

[6] THE 1 ½ SECTIONS consists of all of Section 59 and the E/2 of Section 60 Blk. K-4, Deaf Smith County, Texas totaling approximately 973.95 acres identified by the USDA FSA as FSN 2311. However, the District Court and the parties continue to refer to this farm as "the 960 Acres" which is a misnomer.

Oswald, John and Jo Ann Veigel Eudy, Richard Oswald, Ramona Oswald, Roberta Oswald and their heirs. *See* Exhibits 1 and 2 attached. As to THE 1½ SECTIONS, Larry and Pat Walter and their heirs may also have an interest to the extent that AAC's original acquisition of THE 1½ SECTIONS is determined to be void in violation of the bankruptcy stays.

5.     Similarly, APPELLEES (and other members of the Rabobank Group, including but not limited to Rabobank International and Utrecht-America Holdings, Inc., who operate as wholly owned subsidiaries with cross-guarantee agreements, consolidated capital, and financial reporting with the *Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, of Utrecht, The Netherlands, a/k/a "Rabobank Nederland" and/or "Rabobank", which itself is owned by effectively a partnership of local Dutch banks which are owned by their respective local Dutch cooperative members/customers) and those now[7] or who in the past[8] or future may claim interests flowing from either APPELLEE, may have interests affected by the BRIEF particularly as it relates to determination of legal title to XXI'S ORIGINAL TEXAS PROPERTIES, XXI'S ORIGINAL NM PROPERTIES, and/or THE 1½ SECTIONS and/or potential

---

[7]   On information and belief, Champion Feeders LLC. and/or its principals including the Parker Ranch Livestock LLC of Hawaii, Kevin Buse, Buttonwillow Land and Cattle Co., Matthew J. Echeverria, Kevin Crooks, David G. Doshier, and/or Tim E. Wilhelm have recently leased XXI'S ORIGINAL TEXAS PROPERTIES and THE 1½ SECTIONS from the APPELLEES with an option to purchase.

[8]   For example, *see* PACER Docs. 42-60 and 42-61.

liability of APPELLEES.    Additionally, the United States Department of Agriculture's ("USDA") Farm Service Agency ("FSA") and National Appeals Division ("NAD")[9] may have interests affected by the BRIEF particularly as it relates to determination of legal title to XXI's ORIGINAL TEXAS PROPERTIES, XXI's ORIGINAL NM PROPERTIES, and/or THE 1½ SECTIONS.

6.    Additionally, there are abated professional negligence claims against XXI's and VFP's bankruptcy counsel in an abated case filed as Cause NO. 93,357-E in the 108th District Court, Potter County, Texas styled *Terra XXI Ltd., a Texas Limited Partnership and Veigel Farm Partners v. Frederick Wolfram, The Wolfram Law Firm, P.C., Tom Bunkley, Barras & Bunkley, Karl Baumgartner, and Whittenburg Whittenburg, Schachter & Harris, P.C.,* in which the defendants therein may have interests affected by the BRIEF particularly as it relates to determination of legal title to XXI's ORIGINAL TEXAS PROPERTIES, XXI's ORIGINAL NM PROPERTIES, and THE 1½ SECTIONS which may serve to mitigate any damages against them.

7.    Similarly, there are cross claims for professional negligence against Mullin, Hoard, & Brown LLP, Van W. Northern, Esq., and the Northern Law Firm related to post-bankruptcy prior litigation with APPELLEES still

---

[9]    For example, *see* PACER Docs. 35-44, 35-45, 35-46, 35-47, and 35-48.

pending in Cause NO. 35997 in the 33rd District Court for Burnet County, Texas styled *Burnet Central Appraisal District v. Terra Partners, LP, et. al.* awaiting transfer and final judgment.    These cross defendants may have interests affected by the BRIEF particularly as it relates to determination of legal title to XXI'S ORIGINAL TEXAS PROPERTIES, XXI'S ORIGINAL NM PROPERTIES, and/or THE 1½ SECTIONS which may serve to mitigate any damages against them.

8.    Furthermore, this Court may have a direct interest in the BRIEF to protect the integrity of its jurisdiction and opinion(s) as well as the integrity and jurisdiction of the federal courts and bankruptcy jurisprudence.    In so doing, there may be similarly situated borrowers and overzealous creditors who may have separate interests which might be affected by the BRIEF generally with regards to the *res judicata* effect of a confirmed bankruptcy plan and a creditor's lack of standing.

9.    Additionally, federal and state banking, insurance, and consumer protection regulators and tax collectors as well as APPELLEES' customers may have direct interests in the BRIEF related to APPELLEES' lack of capacity resulting from their unauthorized/unlicensed/unlawful depository "banking"

activities and selling insurance without amending their certificate of

authority to do business in Texas to show such business.[10]

---

[10] *See* PACER Doc. 42-2 at paragraph 6 – 31 referencing supporting documents therein.

## SUMMARY AND BACKGROUND OF THE ARGUMENTS

10.     The purpose of this BRIEF is to point out possibly inconvenient but nonetheless inescapable and conspicuous errors of fact and law in an attempt to alert the Court of a resulting *herd of elephants in the room* not addressed by the parties' briefs or the District Court which is necessary for this Court to protect its jurisdiction and the integrity of its opinion on this APPEAL. This BRIEF will show that APPELLEES committed fraud on DEBTORS, Terra XXI Ltd.'s ("XXI") and Veigel Farm Partners' ("VFP") bankruptcy court, and violated the automatic bankruptcy stays, confirmed plans, discharge injunctions, and controlling bench ruling regarding settlement of the DEBTORS' adversary claims.  As a result, the post confirmation judgments for the APPELLEES relied upon by the District Court, including those previously affirmed by this Court, are legal nullities that are void *ab initio* and can never serve to support *res judicata* or collateral estoppel in this CASE and APPEAL or any other.

11.     In short, in addition to pointing out the District Court's legal inconsistencies and factual errors along with other issues related to APPELLEES' standing and capacity, this BRIEF will conclusively show that the judgment in the STATE WRONGFUL FORECLOSURE SUIT,[11] and all those

---

[11]  Identified at footnote 1 (e) *supra*.

1

founded upon or tainted by such, are legally null and void *ab initio* as a result of 1) AAC's 2003 non-judicial foreclosure on XXI'S ORIGINAL TEXAS PROPERTIES[12] *pursuant only to its original pre-petition 3rd lien deed of trust (No. 98-1254)*[13] and not the original pre-petition **2nd** lien deed of trust (No. 98-1253)[14] nor, more significantly, the single new **2nd** lien deed of trust that was to have been *conditionally* allowed by §§3.05 and 8.07 of XXI'S PLAN[15] in violation of XXI'S PLAN and discharge injunction;[16] and 2) Robert "Bob" W. and Ella Marie Veigel's (the "VEIGELS") constitutionally and statutory protected vested superior originally designated homestead[17] rights in *both* XXI'S ORIGINAL TEXAS PROPERTIES and THE 1½ SECTIONS.[18]

12.    Although the doctrine of the presumption of finality of judgments is necessarily strong, there are applicable recognized exceptions in context of violations of bankruptcy discharge injunction and fundamental error involving a public policy interest such as Texas' constitutionally protected

---

[12] Identified at footnote 4 *supra*.

[13] *See* PACER Docs. 35-74 and 35-73 and Case No. 00-20877-bjh-11 PACER Doc. 149-20 attached as Exhibit 63.

[14] *See* Case No. 00-20877-bjh-11 PACER Doc. 149-28 attached as Exhibit 61.

[15] XXI'S PLAN is identified at footnote 1 (b) *supra*.

[16] *See* §6.01 of XXI'S PLAN [PACER Doc. 35-23] and expressed permanent injunction in order confirming XXI'S PLAN [PACER Doc. 35-24 at page 3].

[17] *See* PACER Doc. 35-67 and Case No. 00-20877-bjh-11 PACER Doc. 152-17 attached as Exhibit 33 concerning 4/30/2007 homestead designation [*see* Case No. 2:05-cv-00314-J PACER Doc. 79 attached as Exhibit 34] addressed by the District Court in RAF'S SUIT ON FCBT'S ORIGINAL NOTES (identified at footnote 1 (g) *supra*) and RAF'S & AAC'S DECLARATORY JUDGMENT SUIT (identified at footnote 1 (i) *supra*).

[18] Identified at footnote 6 *supra*.

homestead rights particularly when there is little or no unfair prejudice to the parties or non-parties. APPELLEES and those who may claim through them with notice of the *lis pendens* of record[19] cannot show unfair prejudice as the real properties and claims at issue have not been transferred to third parties.

13. As to AAC, it has been judicially admitted and supposedly adjudicated in the EQUIPMENT SUIT[20] and RAF's DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES[21] that AAC reassigned all of its interests (except its claimed title to XXI's ORIGINAL TEXAS PROPERTIES and the 75% undivided interest in THE 1½ SECTIONS) to RAF's predecessor Ag Services of America, Inc. ("ASA") sometime prior to the end of October 2003 and AAC has failed to satisfy the superior debts originally secured by XXI's ORIGINAL TEXAS

---

[19] *See* Exhibits 31 and 32 attached.

[20] Identified at footnote 1 (h) *supra*. The opinions and final judgment in the EQUIPMENT SUIT [PACER Doc. 10-11] improperly fail to expressly distinguish between the legal standing RAF and AAC. **However, necessarily implicit in such opinions denying defendants' limitations defense therein** (as subsequently held by *Rabo Agrifinance, Inc. v. Veigel Farm Partners,* NO. 2:05-CV-243, 2008 WL 341425, *3 (N.D.Tex., 2/7/2008) based solely on the trial testimony of Linda Kobliska, Esq. [Exhibit 72 attached] to be *res judicata*) **is that AAC held no claim or security as it had reassigned all of its interests back to ASA** as part of the October 20, 2002 settlement of the BANKRUPTCY ADVERSARY – prior to AAC's 2003 foreclosures on XXI's ORIGINAL TEXAS PROPERTIES and the 75% undivided interest in THE 1 ½ SECTIONS. However, *see* Section II *infra*.

[21] Identified at footnote 1 (f) *supra*. *See Rabo Agrifinance, Inc. v. Veigel Farm Partners,* NO. 2:05-CV-243, 2008 WL 341425, *3 (N.D.Tex., 2/7/2008) (holding based solely on John Roth's summary judgment affidavit [Exhibit 73 attached], *purportedly correcting* Linda Kobliska's prior trial testimony in the EQUIPMENT SUIT [Exhibit 72 attached], that AAC reassigned all of its interests back to ASA sometime in October 2003 - *conveniently* after AAC's non-judicial foreclosure on the 75% undivided interest in THE 1 ½ SECTIONS). However, *see* Section II *infra*.

PROPERTIES nor has any associated credit been given to XXI *et. al.* on such debts. As such, AAC cannot claim any unfair prejudice as it is owed no debt by XXI *et. al.* and continues to collect hundreds of thousands dollars of annual rent[22] resulting from its $20,000 credit bid for XXI'S ORIGINAL TEXAS PROPERTIES while acknowledging that its title is still being contested in this CASE.

14.    Similarly, RAF cannot claim unfair prejudice as it continues to hold title to a 25% undivided interest in THE 1½ SECTIONS encumbered by APPELLANT'S rights in the superior Bartlett and Company's abstract of judgment lien[23] and the *lis pendens* of record referencing this CASE; and has also been supposedly held to hold the approximate $4.5 million unpaid judgment resulting from RAF'S SUIT ON FCBT'S ORIGINAL NOTES[24] and the approximately $2.0 million unpaid judgment resulting from RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES.    These judgments are purportedly secured respectively by the 1) original 1st lien deed of trust and

---

[22] *See* for example, PACER Docs. 42-60 at page 2 and 42-61 at page 2. Also *see* the subsequently bankruptcy filings in *In re Cnossen Dairy* No. 10-20760-rlj-11 (Bankr.N.D.Tex.) indicating that for 2011, Cnossen Dairy was paying $50,000 per month for 8 months ($400,000 per year) under a new lease of a portion of XXI'S ORIGINAL TEXAS PROPERTIES and THE 1 ½ SECTIONS (*see* No. 10-20760-rlj-11 PACER Docs. 131-1, 148-1, 224-1, 281-2 at page 11, 288-1, 312 at page 4, 345-1, 353-2 at page 14, 359 at page 4, 375-1, 382 at page 5, and 434 page 5).

[23] *See* PACER Docs. 129-2, 129-7, and 129-31.

[24] Identified at footnote 1 (g) *supra*.

4

mortgages[25] on XXI's ORIGINAL TEXAS PROPERTIES (which RAF has continued to refuse to foreclose[26]) and XXI's ORIGINAL NM PROPERTIES[27] (which RAF is now seeking to judicially foreclose in RAF's NM FORECLOSURE SUIT[28]) granted to the Farm Credit Bank of Texas ("FCBT"); 2) original 2nd lien deed of trust and mortgages[29] granted to ASA on the same properties and 3) remaining original 3rd lien mortgages granted to AAC on XXI's ORIGINAL NM PROPERTIES.[30]

15.    Instead of allowing XXI's ORIGINAL TEXAS PROPERTIES as the primarily collateral to satisfy RAF's claims, it is reasonable to connect the dots to see that APPELLEES continue to conspire to seek an unlawful $11.0+ million windfall from selling AAC's claimed title to XXI's ORIGINAL TEXAS PROPERTIES[31] while RAF collects it judgments from other assets. APPELLEES

---

[25] *See* Exhibits 39 and 40 attached.

[26] APPELLEES are always quick to claim that protracted litigation including this CASE has somehow precluded and delayed collection of RAF's judgment debts. However, such claim is certainly belied by the fact that, if APPELLEES were not concerned about the invalidity of RAF's liens and judgments and/or RAF's and AAC's title interests XXI's ORIGINAL TEXAS PROPERTIES and THE 1 ½ SECTIONS as argued by this BRIEF, then RAF could have simply non-judicially foreclosed on AAC's purported interest in XXI's ORIGINAL TEXAS PROPERTIES at any time since 2004 to satisfy its judgments.

[27] Identified at footnote 5 *supra*.

[28] Identified at footnote 2 (c) *supra*.

[29] *See* Exhibits 61 and 62 attached.

[30] *See* Exhibits 63 and 64 attached.

[31] For example, based on information and belief, within the last several months APPELLEES have entered into a contract with RAF's customer Champion Feeders LLC and/or its principals to lease XXI's ORIGINAL TEXAS PROPERTIES and THE 1 ½ SECTIONS to plant the spring 2012 crops thereon with an option to buy for $2,000 per acre if, or when, APPELLEES can provided good title. Such option price would place a

have also sought to unfairly disadvantage APPELLANT and the judgment debtors by entangling and burdening them with the expense of at least 13 related lawsuits[32] filed by APPELLEES in retaliation for exposing APPELLEES' unauthorized banking and business model of illegally tying other financing to required farm input product purchases with arbitrary and undisclosed markups[33] serving as additional usurious interest which likely lead Rabobank to have to acquire its then defaulting borrower/customer, ASA, in an apparent attempt to cover up such activities that likely would have been exposed if ASA and AAC had been allowed to financially fail and file bankruptcy.

value on the 5,662.88 acres making up just XXI's ORIGINAL TEXAS PROPERTIES of $11,325,760 which is almost 75% more than enough to satisfy all of RAF's judgments. Yet, AAC continues to fail to payoff the superior encumbrances and RAF continues to fail to non-judicially foreclose on AAC's purported interest XXI's ORIGINAL TEXAS PROPERTIES thereby preventing and denying any credit to RAF's judgment debtors from the sale of the original primary collateral.

[32] Specifically, 1) the original claims in the GUARANTORS' COUNTERCLAIM SUIT; 2) AAC's EVICTION SUIT; 3) RAF's DEFICIENCY SUIT ON ASA's ORIGINAL NOTES; 4) RAF's SUIT ON FCBT's ORIGINAL NOTES; 5) the EQUIPMENT SUIT; 6) RAF's & AAC's DECLARATORY JUDGMENT SUIT; 7) AAC's SUIT TO QUASH WRIT ON DFS's AJ LIEN; 8) the cross-claims in the FRIEMEL SUIT; 9) RAF's & AAC's CRP SUIT; 10) the TEXAS DEFICIENCY SUIT ON ASA's & AAC's NOTE 11) RAF's NM FORECLOSURE SUIT, 12) RAF's & AAC's GARNISHMENT SUIT; and 13) RAF's & AAC's EVICTION SUIT ON THE 1 ½ SECTIONS as identified in footnotes 1 and 2 *supra*.

[33] See *Veigel Farm Partners and Terra XXI Ltd., v. Ag Services of America, Inc. and Ag Acceptance Corporation*, NO. 01-02007-saf, PACER Doc. 132 p.11 - 15 (Bankr.N.D.Tex.-Amarillo 10/9/2002) (unpub. memo. op. & order) [PACER Doc. 42-44 at pages 11 – 15]; e-mail from Everette Jobe, general counsel for Texas Department of Banking indicating that ASA's and AAC's business practice would appear to violate numerous Texas laws [PACER Doc. 42-62] supported by ASA's documents *see* Case No. 00-20877-bjh-11 PACER Docs. 145-5 and 145-6 attached as Exhibits 74 and 75 respectively; and APPELLEES' press releases regarding acquisition of ASA by Rabobank [PACER Docs. 42-27, 42-33, and 42-34]. Also *see* Section IV *infra*.

16.    If there are any parties unfairly prejudiced, it is the APPELLANT and associated interests who not only have been deprived of credit for the equity in XXI'S ORIGINAL TEXAS PROPERTIES, but who are prejudiced by the void judgments resulting from APPELLEES' repeated violation of the bankruptcy stays, plans, and discharge injunctions shown herein.

17.    It is obvious why APPELLEES do not need or want to address the *herd of elephants in the room* particularly as related to opinions founded upon void judgments that violate the bankruptcy orders and injunctions. However, it is unclear why and APPELLANT[34] and the District Court did not address these issues unless the District Court does not want to consider upsetting its own and/or this Court's prior judgments.  In any event, this Court should be advised of the following arguments so that in the interest of justice this Court can protect its jurisdiction and judgment as well as XXI's and VFP's bankruptcy court's jurisdiction and judgment by recognizing and holding such post-confirmation judgments by non-bankruptcy courts and

---

[34] Although it should be noted that APPELLEES filed a motion for sanctions against APPELLANT and APPELLANT'S counsel in this CASE on grounds that APPELLANT'S suit is a groundless collateral attack on the STATE COURT WRONGFUL FORECLOSURE SUIT and the EQUIPMENT SUIT that is barred by *res judicata*. [PACER Docs. 9 and 10] APPELLEES' motion was denied.  [PACER Doc. 98].  Further, as APPELLANT is seeking authority to execute on DFS AJ Lien on property that XXI and the VEIGELS claim interest as a result of the STATE COURT WRONGFUL FORECLOSURE SUIT and THE DECLARATORY JUDGMENT SUIT being void, there may be a divergence of legal interests between the APPELLANT and otherwise aligned or associated parties.

APPELLEES' title, possession, and security claims legally null and void without *res judicata* or collateral estoppel affect.

18.    As the prior findings of fact and conclusions of law have been irreparably tainted by APPELLEES' actions and void judgments, this Court should remand the CASE with additional instructions that, for the sake of judicial economy to minimize potential future litigation,[35] XXI'S BANKRUPTCY CASE and VFP'S BANKRUPTCY CASE[36] be reopened for reconsideration on the merits of all legal issues and factual findings including Fed. R. Civ. P. Rule 60 motion(s) and motion(s) to enforce XXI'S PLAN and VFP'S PLAN[37] with contempt for APPELLEES' violations of the stays, plans, and discharge injunctions as well as fraud on the bankruptcy court related to ASA's and AAC's failure to disclose the now judicially admitted fact that ASA had assigned all of its pre-petition interests to AAC prior to or shortly after filing joint proofs of claims subsequently resulting in a fraudulently induced settlement of the BANKRUPTCY ADVERSARY[38] and failure of ASA's and AAC's consideration thereto.

---

[35] Identified in footnote 3 *supra*.
[36] Indentified in footnote 1(b) and 1(a) respectively *supra*.
[37] Identified in footnote 1 (a) *supra*.
[38] Identified in footnote 1 (c) *supra*.

**ARGUMENTS**

**I.  DFS'S AJ LIEN AND PURCHASE MONEY LIENS ARE THE ONLY LIENS TO SURVIVE CONFIRMATION OF XXI'S PLAN AND VFP'S PLAN, AS SUCH, APPELLEES' INTERESTS IN XXI'S ORIGINAL TEXAS PROPERTIES, XXI'S ORIGINAL NM PROPERTIES, THE 1½ SECTIONS, AND XXI'S AND VFP'S PERSONAL PROPERTY ARE LEGALLY NULL AND VOID *AB INITIO* AS ARE THE POST-CONFIRMATION JUDGMENTS IN FAVOR OF APPELLEES**

19.    As raised by Issue Three of *BRIEF OF APPELLANT* in this APPEAL ("APPELLANT'S BRIEF") and as misdirected by Section IV. B. of *RESPONSE BRIEF OF DEFENDANTS-APPELLEES* ("APPELLEES' BRIEF"), the District Court erroneously found and held in the 1ST SUMMARY JUDGMENT[39] that AAC's foreclosure on XXI'S ORIGINAL TEXAS PROPERTIES was "*made pursuant to the second lien it was **granted** under*" XXI'S PLAN which thereby cut off Diversified Financial Services ("DFS") pre-petition abstracted judgment lien of record[40] ("DFS'S AJ LIEN") expressly allowed as the *only **third*** lien under XXI'S PLAN.[41]

**A. XXI'S PLAN AND VFP'S PLAN SERVE AS *RES JUDICATA*, AND AS SUCH, JUDGMENTS BY NON-BANKRUPTCY COURTS THAT INCORRECTLY INTERPRET SUCH ARE LEGALLY NULL AND VOID AND CANNOT SUPPORT *RES JUDICATA***

20.    The *bull elephant in the room* that has not been, but must be addressed, is that the District Court continues to err by failing to consider

---

[39] *See Terra Partners v. Rabo Agrifinance, Inc.*, No. 2:08-CV-194-J, 2010 WL 3270225 *12 (N.D.Tex. 8/18/2010) referred to herein as the 1ST SUMMARY JUDGMENT.

[40] *See* Exhibit 54 attached.

[41] *See* ¶6 of Exhibit A to order confirming XXI'S PLAN [PACER Doc. 35-24].

9

and enforce the prior binding *res judicata* effect of XXI'S PLAN and VFP'S PLAN. *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th.Cir.1992) (a prior bankruptcy confirmation order is given the same effect as a district court's judgment on the merits for preclusion purposes) citing 11 U.S.C. § 1141(a) and *Stoll v. Gottlieb,* 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (Ill.1938) (all courts required to give full effect to bankruptcy judgments confirming plan).

21.    Instead, the District Court errs when it relies exclusively on *res judicata* from **subsequent** legally null and void judgments in the EQUIPMENT SUIT and RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES which, in turn, previously relied upon legally null and void judgments in the STATE COURT WRONGFUL FORECLOSURE SUIT which lacked subject matter jurisdiction to enter judgments that violated XXI'S PLAN and discharge injunction. **As a matter of law, such non-bankruptcy courts lacked jurisdiction to ignore or *incorrectly* interpret and enter judgments that thereby served to effectively modify XXI'S PLAN to** 1) exempt Ag Services of America, Inc. ("ASA") and AAC from the required condition precedent under §8.07 of XXI'S PLAN; 2) allow ASA and AAC to retain and subsequently post **both** their *original 2nd* and *3rd* pre-petition deeds of trust (Nos. 98-125*3* and 98-125*4* respectively) for non-judicial foreclosure on

XXI's ORIGINAL TEXAS PROPERTIES [PACER Docs. 35-72 and 35-73 respectively]; and 3) uphold AAC's non-judicial foreclosure (and resulting deficiency) of XXI's ORIGINAL TEXAS PROPERTIES on AAC's original pre-petition 3rd lien deed of trust No. 98-1254 which was previously extinguished upon confirmation of XXI's PLAN as a matter of law pursuant to 11 U.S.C. § 1141(c) and XXI's PLAN that did not expressly preserve either specific original pre-petition deeds of trust, but instead, expressly *conditionally provided* for a *single new 2nd lien* only if ASA and AAC complied with §8.07 of XXI's PLAN which is undisputed neither ASA or AAC never satisfied.

22.    Only XXI's and VFP's bankruptcy court continues to have *exclusive* "arising under" jurisdiction to *correctly* interpret and enforce XXI's PLAN and VFP'S PLAN involving "core" bankruptcy matters requiring more than the simple application of contract law.  A non-bankruptcy court (including a federal court that has neither withdrawn the bankruptcy reference so as to sit as a bankruptcy court, nor is not sitting as an appellate court on direct timely appeal of a bankruptcy order), does not have concurrent subject matter jurisdiction to enter an order that construes a confirmed bankruptcy plan or discharge *incorrectly* or otherwise effectively modifies a bankruptcy order. **If it does, then its judgment violates the bankruptcy court's self-**

11

effectuating permanent injunction, is a legal nullity and void *ab initio*, cannot support *res judicata* or collateral estoppel, and is subject to a mandamus action or collateral attack at any time in any court notwithstanding the *Rocker-Feldman* Doctrine under Texas and federal law as shown *infra.*

23.    Further, the specific permanent injunction provided by XXI's PLAN and VFP's PLAN enlarges the statutory injunction provided by 11 U.S.C. §524(a) by expressly enjoining "*the commencement of ... any action, the employment of process, and the doing of any act to collect, recover, or offset any debt discharged hereby as a personal liability of Debtor, **or from the property of the Debtor** ... except as provide in the Plan.*" [PACER Docs. 35-24 and 35-36 at page 3]. *Republic Supply v. Shoaf,* 815 F.2d 1046 (5th.Cir.1987) (regardless of whether such *expressed* provision was within the authority of the bankruptcy court or was inconsistent with or enlarged the 11 U.S.C. §524 injunction, it was not appealed, and thus now serves as *res judicata*).

24.    The orders confirming XXI's PLAN and VFP's PLAN expressly enlarged the 11 U.S.C. §524(a) discharge injunction, without objection, to enjoin and void any action on *all* pre-petition liens except for DFS's liens, including DFS's AJ LIEN, which were the *only* pre-petition liens expressly

12

preserved in XXI's PLAN and VFP's PLAN by paragraph 6 of Exhibit A to such orders stating "*Diversified will retain all liens and security interests that secure its pre-petition claims*". [PACER Docs. 35-24 and 35-36 at page 4]. There are not any similar provisions in XXI's PLAN and VFP's PLAN 1) preserving any other pre-petition lien or security interest, including AAC's deed of trust No. 98-125*4*; or 2) exempting any other allowed secured claim from XXI's PLAN and VFP's PLAN § 8.07 redocumentation condition precedent for **both** allowed **claims** and **security**.

25.    "*It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.*" *Kalb v. Feuerstein*, 308 U.S. 433, 438-39, 60 S.Ct. 343, 84 L.Ed. 370 (Wis.1940). Injunctions issuing from the core jurisdictional authority of the *bankruptcy court* such as 11 U.S.C. §524 are *not* subject to collateral attack in *any* other court. *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.en Banc.2000) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (Tex.1995)).

26.    A judgment is void, cannot support *res judicata*, and is subject to collateral attack when the court rendering judgment had no jurisdiction of the subject matter or no jurisdiction to enter the particular judgment. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex.2010). Bankruptcy discharge acts as injunction to prevent creditor from instituting or continuing any action to collect on a discharged debt ***or on avoided lien.*** *Faires v. Billman*, 849 S.W.2d 455, 456 (Tex.App.-Austin.1993, no writ). Pursuant to 11 U.S.C. §524(a)(1) and TEX. PROP. CODE §52.042, any judgment a Texas court would render that violates a bankruptcy order would be void under federal law for lack of subject matter jurisdiction. *Chae v. Schneider*, 244 S.W.3d 425, 426-27 (Tex.App.-Eastland.2007, no pet.). A void judgment cannot support *res judicata* or estoppel as it is but a *coram non judice* or *brutum fulmen* "*by which no rights are divested, and from which none can be obtained. It neither binds nor bars any one. * * * It is good nowhere, and is bad everywhere*" ***even if unsuccessfully appealed to the highest court.*** *Dollert v. Pratt-Hewit Oil Corporation*, 179 S.W.2d 346, 348 (Tex.Civ.App.-San Antonio.1944, writ ref'd w.o.m.), *cert. denied*, 324 U.S. 853, 65 S.Ct. 713, 89 L.Ed. 1412 (1945); *Williams v. White*, 223 S.W.2d 278, 283 (Tex.Civ.App.-San Antonio.1949, writ ref'd); and *Easterline v. Bean*, 49 S.W.2d 427, 429 (Tex.1932) ("*a void judgment is one*

14

*entirely null within itself, and which is not susceptible of ratification or confirmation, and its nullity cannot be waived*").  State court judgment is void to the extent it attempts to rule on matters relating to property that is part of the bankruptcy estate and such void judgments may be circumvented by collateral attack or remedied by mandamus.   *Eguia v. Eguia*, __S.W.3d__, 2012 WL 1066022 (Tex.App.-Corpus Christi.3/29/2012).

27.    **Although a non-bankruptcy court might have concurrent subject matter jurisdiction to construe the debtor's plan or discharge *correctly*, it lacks subject matter jurisdiction to get it *wrong* and effectively modify the bankruptcy order with its own judgment rendering it a legal nullity and void *ab initio* without preclusive effect and not subject to the *Rooker-Feldman* doctrine.**   That is, a non-bankruptcy court cannot be allowed to ignore or circumvent bankruptcy law and a bankruptcy court's confirmation of a plan of reorganization and discharge injunction simply by erroneously interpreting and thereby undoing the plan and eviscerating federal bankruptcy law and jurisdiction. *In re Kim*, 2011 WL 2708985 at *1 (Bankr.W.D.Tex.2011) citing *In re Hamilton,* 540 F.3d 367, 373 (6th.Cir.2008); *In re Egleston*, 448 F.3d 803, 809 (5th.Cir.2006); *In re Pavelich,* 229 B.R. 777, 781-84 (9th Cir.BAP.1999) (cited by *In re Gervin*, 300 Fed.Appx. 293 fn 9 (5th.Cir.2008)); *In re Gruntz,* 202 F.3d 1074, 1083

(9th.Cir.2000); *In re Cruz,* 254 B.R. 801, 812-13 (Bankr.S.D.N.Y.2000); *In re McGhan,* 288 F.3d 1172, 1178-81 (9th.Cir.2002); *In re Birting Fisheries, Inc.,* 300 B.R. 489, 497-501 (9th.Cir.BAP.2003); *In re Gurrola,* 328 B.R. 158, 163-75 (9th.Cir.BAP.2005); and 4 COLLIER ON BANKRUPTCY ¶ 524.02[1] at 524-20 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

28.    The District Court completely ignored APPELLANT'S argument and the uncontroverted summary judgment documents in this CASE conclusively showing **AAC *actually* foreclosed upon and claims title to XXI's ORIGINAL TEXAS PROPERTIES** *only* **pursuant to AAC's original pre-petition 3rd lien deed of trust recorded as instrument No. 98-1254** [PACER Doc. 35-73] **as expressly shown by the SUBSTITUTE TRUSTEE'S DEED to AAC** [PACER Doc. 35-74] - not *a single new*[42] *"second lien"* that was contemplated by XXI's PLAN but never actually *granted.*[43]

---

[42] *See In re Troutman Enters., Inc.,* 253 B.R. 8, 11 (6th.Cir.BAP.2000) ("Confirmation, then, had the dual effect of discharging the Petitioning Creditors' preconfirmation debt and replacing it with their Plan Claims. *See In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3d.Cir.1992) ("[O]nce the reorganization plan is approved by the bankruptcy court, each claimant gets a `new' claim based upon whatever treatment is accorded to it in the plan itself."). The plan is essentially a new and binding contract between the Reorganized Debtor and the Petitioning Creditors").

[43] The agreed order [PACER Doc. 35-21] concerning ASA's and AAC's objections to XXI' PLAN [PACER Doc. 35-20] and §3.05 (4)(d) of **XXI's PLAN conditionally provided for** "*a* [new **instead of preserving either or both "the" original second and third lien deeds of trusts and mortgages**] *second lien* [not an expressed separate deed of trust with power of sale in Texas and separate "regular" mortgages in New Mexico which does not allow deed of trust with power of sale liens on agricultural properties pursuant to 48-10-3(H)(1) NMSA 1978] *on all real property owned by Terra XXI Ltd. in Deaf Smith County, Texas and Quay and Guadalupe Counties, New*

29.     Although ASA also posted XXI's ORIGINAL TEXAS PROPERTIES for non-foreclosure for the same day pursuant to ASA's original pre-petition *2nd* lien deed of trust recorded as instrument No. 98-125*3* [PACER Doc. 35-72], such foreclosure was pulled down[44] after AAC was the one and only bidder at the foreclosure of AAC's original pre-petition *3rd* lien deed of trust No. 98-125*4*.[45] Had ASA and AAC chosen to merge their interests and only post

*Mexico* [at the time of confirmation which was to have included the undivided 50% interest in New Mexico not previously encumbered by any original pre-petition mortgage that was subsequently acquired by XXI in 1999 and excluded the tract of the New Mexico property encumbered by the original mortgages but sold free and clear with approval of the bankruptcy court prior to confirmation (*see* Exhibit 55)]" ***only if* ASA and AAC complied with the expressed requirements of §8.07 of XXI's PLAN which ASA and AAC attempted [PACER Doc. 35-60] but admittedly failed to satisfy**.

[44] Similarly, the non-judicial foreclosure pursuant to the original pre-petition 1st lien deed of trust given to the FCBT was posted for foreclosure by First Ag Credit, FLCA ("FAC FLCA") (*see* Case No. 00-20877-bjh-11 PACER Doc. 152-11 attached as Exhibit 49) but then pulled down pursuant to a prior undisclosed forbearance agreement between FAC FLCA and ASA (*see* Case No. 00-20877-bjh-11 PACER Doc. 152-10 attached as Exhibit 47).    However the forbearance agreement was breached or ignored when ASA was unable to match within 48 hours XXI's *et. al.'s* investor, George Chapman's 8/4/2003 offer to FAC FLCA on behalf of XXI and APPELLANT to immediately purchase all of FAC FLCA's interest in cash for the total amount FAC FLCA claimed it was owed that as evidenced by ASA's request to Rabobank for additional special funding (*see* Case No. 00-20877-bjh-11 PACER Doc. 152-14 attached as Exhibit 48).    Nevertheless, ASA's agreement with FAC FLCA caused FAC FLCA to unlawfully reject or clog XXI's right to refinance through Mr. Chapman on 8/4/2003.

[45] For the Court's convenience, the Court may take notice of 1) FCBT's original prepetition 1st lien deed of trust and mortgages (*see* Case No. 00-20877-bjh-11 PACER Docs. 149-3, 149-4, and 149-5 attached as Exhibits 39 and 40 respectively); ASA's original prepetition 2nd lien deed of trust and mortgages (*see* Case No. 00-20877-bjh-11 PACER Docs. 149-18, 149-19, and 154-12 attached as Exhibits 61 and 62 respectively); 3) AAC's original prepetition 3rd lien deed of trust and mortgages (*see* Case No. 00-20877-bjh-11 PACER Docs. 149-20, 149-21, and 149-22 attached as Exhibits 63 and 64 respectively); and DFS's original abstract of judgment liens (*see* Case No. 00-20877-bjh-11 PACER Docs. 150-24, 150-25 page 1, and 150-25 page 2

17

and foreclose pursuant to ASA's original pre-petition *2^(nd)* lien deed of trust No. 98-1253, then *arguably* AAC might claim it foreclosed on XXI'S ORIGINAL TEXAS PROPERTIES pursuant to the second lien which was to have been allowed or otherwise preserved under XXI'S PLAN. However it is undisputed that did not occur[46] and APPELLEES have never attempted to

attached as Exhibit 54 respectively). Note that all of the liens are still filed of record and have not been released although FCBT's and DFS's liens have assignments of record but not ASA's or AAC's. Also note that APPELLEES have judicially admitted in RAF'S NM FORECLOSURE SUIT that they and the FCBT knew the mortgages did not encumber the undivided interest in the New Mexico properties held by the S. S. Williams estate until 1999 (*see* Case No. 00-20877-bjh-11 PACER Docs. 150-7, 150-12, and 150-13 attached as Exhibits 51 – 53 respectively). However, RAF seeks to rely upon the after acquired title doctrine despite such knowledge and acceptance of the title defect. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd. et. al.*, NO. 30,286, 274 P.3d 127, 2012-NMCA-038 (N.M.App. 1/12/2012, NM NO. 33449 cert. denied (3/7/2012)) ("*Rabo acknowledges that, at the time the mortgage was granted in 1994, Terra had title to only 50% of the property*"; however, RAF is not precluded from seeking to enlarge its mortgage lien from a 50% interest to a 100% interest upon a showing that the doctrine of after-acquired title is applicable on remand).

[46] Even though ASA and AAC filed joint proof of claims against XXI and Veigel Farm Partners ("VFP") and were to be allowed a combined secured claim under both XXI'S PLAN [PACER Doc. 35-23] and VFP's PLAN [PACER Doc. 35-35] and ASA and AAC represented in the settlement of the bankruptcy adversary that ASA held claims that it was compromising as consideration, it was subsequently discovered [PACER Doc. 27-6 at pages 83 – 85 and Case No. 00-20877-bjh-11 PACER Docs. 149-12 and 149-23 attached as Exhibits 57 and 65 respectively] that ASA had assigned all of its interests to AAC after filing the joint proof of claims without complying with Fed. R. Bankr. P. Rule 3001(e) which is a fatal defect to their combined allowed claim. *In re Sanchez*. 372 B.R. 289, 316 -319 (Bankr.S.D.Tex.2007).

Comporting with the UCC filings [PACER Doc. 27-6 at pages 83 – 85 and Case No. 00-20877-bjh-11 PACER Docs. 149-12 and 149-23 attached as Exhibits 57 and 65 respectively] and the endorsements from ASA to AAC on the original notes given to ASA [Case No. 00-20877-bjh-11 PACER Docs. 149-10, 149-14, 149-17, and 150-11 attached as Exhibits 56, 59, 60, and 66], it was held in RAF'S SUIT ON FCBT'S ORIGINAL NOTES that in **2006** RAF currently held only the interests original held by the FCBT and that AAC currently held all of the interest originally held by ASA. *Rabo AgriFinance v. Terra XXI, Ltd.*, NO. 2:05-CV-314-J, Not Reported in F.Supp.2d, 2006 WL 2828748 *4 (N.D.Tex.10/4/2006).

18

assert that AAC actually foreclosed on its original pre-petition *2ⁿᵈ* lien deed

of trust No. 98-1253 resulting from an unrecorded, if existing, assignment of

the deed of trust No. 98-1253 from ASA to AAC.

30.    Instead, the parties and the District Court finally correctly agree that

XXI'S PLAN and applicable bankruptcy law control including provisions

under 11 U.S.C. § 1141 that allows for extinguishment of a pre-petition lien

upon confirmation of a Chapter 11 plan of reorganization *even if a secured*

*claim is otherwise allowed* unless such lien is expressly, specifically, and

fully, preserved as the District Court held regarding Issue Four of

APPELLANT'S BRIEF concerning DFS'S AJ LIEN on real property acquired

However, APPELLEES subsequently benefited from their claim splitting and avoided
judicial estoppel when they successfully argued to avoid limitations that AAC had
reassigned all of its interest back to ASA either as part of the October 20, 2002
settlement of the adversary as APPELLEES' counsel Linda Kobliska testified at trial in
the EQUIPMENT SUIT [*see* Case No. 00-20877-bjh-11 PACER Docs. 153-07 at pages 7
and 12 attached as Exhibit 72], or when that subsequently became damning, sometime
in October 2003 subsequent to AAC's non judicial foreclose of XXI'S ORIGINAL
TEXAS PROPERTIES on September 2, 2003 and of the 75% undivided interest in THE 1
½ SECTIONS as held in RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES as per the
contradicted affidavit of John Roth [*see* Case No. 00-20877-bjh-11 PACER Docs.
153-09 at pages 3 attached as Exhibit 73]. *Rabo Agrifinance, Inc. v. Veigel Farm
Partners*, NO. 2:05-CV-243, 2008 WL 341425, *3 (N.D.Tex.2/7/2008).

There is no UCC filing ever showing such reassignment by AAC back to ASA or RAF
with the Texas or New Mexico Secretary of State nor any reassignment of any deed of
trust in Deaf Smith County, Texas, or reassignment of any mortgage in Guadalupe or
Quay Counties in New Mexico from AAC back to ASA or RAF. Further, APPELLEES
have only produced Exhibits 56, 59, 60, and 66 and have never produced any note
showing a subsequent endorsement back to ASA or any of its successors. As in this
CASE, beginning with XXI'S BANKRUPTCY CASE and VFP'S BANKRUPTCY CASE the
APPELLEES have demonstrated a history of playing fast and loose with contradicting
positions particularly with regards to their legal standing so as to mislead the courts to
suit the exigencies of their shifting self interests required at the moment. Also *see*
Section II *infra*.

post-confirmation by XXI in Deaf Smith County where DFS's AJ LIEN was filed of record[47] pre-petition.

31.     However as APPELLANT'S BRIEF points out with respect to Issue Four, the District Court erred because this Court has held that "*the default rule*" is that the "*confirmation of a Chapter 11 plan voids liens not preserved by the plan, **provided that the plan dealt with the property to which they attach and the lien holder participates in the reorganization**" and no property acquired by XXI subsequent to confirmation and subject to the expressly preserved DFS's AJ LIEN of record was *dealt with* by XXI'S PLAN. Hence, DFS's AJ LIEN of record was not extinguished or otherwise specifically limited as to exclude any future acquired property such as the 75% undivided interest in THE 1½ SECTIONS acquired post-confirmation because it was *not dealt with* by XXI'S PLAN.[48] *In re Ahern Enter.*, 507 F.3d 817, 820-

---

[47] *See* Case No. 00-20877-bjh-11 PACER Doc. 150-24 attached as Exhibit 54.

[48] However, as addressed in paragraphs 90 - 94 *infra*, APPELLANT'S Issue Four is moot if AAC never had legal title to the 75% undivided interest in THE 1½ SECTIONS to convey to XXI as result of AAC's and ASA's violation of the automatic stays of XXI'S BANKRUPTCY CASE and VFP'S BANKRUPTCY CASES which never modified to allow AAC to acquire property owned by VFP in which XXI held a security interest that APPELLEES successfully argued and was adjudicated in the EQUIPMENT SUIT to be fixtures to THE 1½ SECTIONS.

Further, as addressed in paragraphs 88 - 89 *infra*, *if* the judgment in RAF's & AAC's DECLARATORY JUDGMENT SUIT is *not* null and void, then implicit in the holding in *Ag Acceptance Corp. v. Veigel*, NO. 2:06-CV-272, 2007 WL 6889358 *9 (N.D.Tex.8/29/2007) that XXI's subsequent conveyance of the 75% undivided interest in THE 1½ SECTIONS to APPELLANT was a fraudulent transfer under Tex. Bus. & Com. Code §24.005 is that such interest was **not** encumbered by AAC's vendor's lien or separate deed of trust. For if the 75% undivided interest in THE 1½ SECTIONS was

21  (5th.Cir.11/6/2007)  and  *In re Burton Securities*,  129  F.3d  607

(5th.Cir.1997).

32.     With regards to Issue Three of APPELLANT'S BRIEF, the District Court

strained to find Shawn Smeins' uncontroverted trial testimony[49] that AAC

foreclosed on a "*third or fourth lien position*" because "*there was three*

*superior liens that were ahead of us*" [PACER Doc. 35-71] was not a

judicial admission.     More significantly, the District Court completely

ignored 11 U.S.C. §1141(c), this Court's holding in *In re Ahern Enter*. and

*In re Burton Securities*, and the undisputed fact that AAC claims title to

XXI's ORIGINAL TEXAS PROPERTIES pursuant *only* to foreclosure of its

original prepetition *3rd lien* deed of trust No. 98-125*4* as expressly shown by

its *SUBSTITUTE TRUSTEE'S DEED* [PACER Doc. 35-74].

33.     Neither the original *2nd* lien deed of trust No. 98-125*3*, the original *3rd*

*lien* deed of trust No. 98-1254, nor the original 2nd and 3rd lien mortgages in

---

encumbered by a superior "*valid lien*" as defined by TEX. BUS. & COM. CODE
§24.002(13), then such interest was *not* an "*asset*" as defined by TEX. BUS. & COM.
CODE §24.002(2)(A) that could have been held to be a fraudulent "*transfer*" as defined
by TEX. BUS. & COM. CODE §24.002(12) of an asset under the Texas Uniform
Fraudulent Transfer Act which is intended to only provide "*remedies for **unsecured**
**creditors** against transfers that impede them in the collection of their claims. ... and it
is therefore appropriate to **exclude property interests** that are beyond the reach of
**unsecured** creditors **from the definition of "asset" for the purposes of this Act**" and
not secured creditors who hold a lien on the transferred property.  *In re Drinks Unique*,
Not Reported in B.R., 2010 WL 3491184 *10-11(Bankr.E.D.Tex.2010).   Also *see*
Section III *infra*.
[49] *See* PACER Doc. 35-71.

New Mexico were expressly specifically preserved by XXI's Plan. Instead,

XXI's Plan §3.05 was meticulously negotiated over ASA's and AAC's

objections[50] to only conditionally allow ASA and AAC a combined *single*

*new* claim[51] which was to be secured, in part, by a *single new* 2nd lien

mortgage (not an expressed deed of trust with power of non-judicial sale

which is not allowed in New Mexico on agricultural properties pursuant to

§48-10-3(H)(1) NMSA 1978) on XXI's remaining real property[52] including

the undivided interest in the New Mexico properties not previously

encumbered by any lien[53] except for DFS's domesticated and abstracted

---

[50]  *See* PACER Docs. 35-20 and 35-21.

[51]  The original pre-petition notes and loan agreements with ASA and AAC contained numerous restrictive covenants that Debtors sought to avoid by XXI's Plan and VFP's Plan requiring a single new standardized loan, security agreement, and regular mortgage without power of non-judicial sale substantively identical to those prepared by the State Bar of Texas (*e.g.*, *Texas Real Estate Form Manual*, 2001 ed.). For example, the various pre-petition original loan documents required co-makers to 1) purchase all of their farm inputs (*e.g.*, seed, fertilizer, chemicals, *etc.*) through ASA at undisclosed marked up prices [*see* footnote 33 *infra*] ; 2) follow the agronomic advice given by ASA on required farm visits; 3) obtain written pre-approval from ASA to utilize on farm grain storage and hiring custom farming by third parties; 4) direct assignment of farm program payments to ASA; and 5) subject financing to ASA's and AAC's internal unpublished credit policies that Rabobank had to approve.

[52]  Prior to confirmation of XXI's Plan, the NE/4 of Section 19, 6N, 29E N.M.P.M in which an undivided 50% undivided interest was encumbered by the original 1st, 2nd, and 3rd lien mortgages and DFS's AJ Lien, was sold to Jimmie and Molly Snipes free and clear of liens pursuant to bankruptcy court order. *See* Exhibit 55 attached.

[53]  *See* for example, *Rabo Agrifinance, Inc. v. Terra XXI, Ltd. et. al.*, NO. 30,286, 274 P.3d 127, 2012-NMCA-038 (N.M.App.1/12/2012, NM NO. 33449 cert. denied (3/7/2012)) ("*Rabo acknowledges that, at the time the mortgage was granted in 1994, Terra had title to only 50% of the property*").

judgments in New Mexico which was the original pre-petition first lien on such interest.

34.    However, the allowed *single new* secured claim contemplated for ASA and AAC was expressly conditioned upon ASA's and AAC's satisfaction of the condition precedent of §8.07 of XXI's PLAN and VFP's PLAN[54] titled *Preparation of Documents Evidencing Claims and Security Interests*[55] requiring all allowed secured claim creditors (*i.e.*, ASA and AAC along with FCBT's successor First Ag Credit ("FAC"), DFS, and John Deere Credit) to submit *new* documents necessary to *evidence* and effectuate their allowed *claim and security* in the expressly specified form[56] for execution by XXI and VFP as the DEBTORS respectively.    As mentioned *supra*, the allowed secured claim of DFS was modified by Exhibit A to the confirmation orders of XXI's PLAN [PACER Doc. 35-24] and VFP's PLAN [PACER Doc. 35-36] whereby paragraph 6 of Exhibit A expressly

---

[54] Identified at footnote 1 (a) *supra*.

[55] 8.07 Preparation of **Documents *Evidencing Claims and Security Interests*: *Holders*** of claims allowed as secured claims under this Plan ***shall*** **provide for the redocumentation of *all claims* and *security interests*** where applicable under the terms and provisions of the Plan. ***Holders*** of such secured claims ***shall*** **provide the documents** to counsel for the Debtor for review and approval prior to the execution of the documents by the Debtor. **All documents *shall* be identical or substantially identical to those prepared by the State Bar of Texas, unless otherwise agreed by Debtor.** (emphasis added)

[56] That is, standard forms "*identical or substantially identical to those prepared by the State Bar of Texas,* [*e.g.*, Texas Real Estate Form Manual, 2001 ed.] *unless otherwise agreed by Debtor*".

specifically preserved all of DFS's prepetition liens and claims including DFS's AJ LIEN without any expressed modification or limitation. Such modification served as the *only* exemption pursuant to 1) the "*where applicable*" clause to the required condition precedent for all allowed secured claims required by § 8.07 of XXI's PLAN and VFP's PLAN; and 2) the expanded discharge injunction in the confirmation orders expressly enjoining any action on any pre-petition liens and security interests against XXI's and VFP's properties.

35.     Furthermore, it is undisputed that FAC [PACER Doc. 35-59] as well as ASA and AAC [PACER Doc. 35-60] timely submitted documents in an attempt to comply with the condition precedent required by §8.07 of XXI's PLAN and VFP's PLAN. These acts demonstrate such claimants' contemporaneous understanding of their obligation to comply with §8.07 of XXI's PLAN and VFP's PLAN in order to satisfy the condition precedent required for granting their allowed claim and security. However, it is also undisputed that the submitted documents did *not* comply in substance[57] with

---

[57] For example, documents submitted by FAC violated VFP's stay and VFP's PLAN, by seeking to reaffirm VFP's personal liability on the debt that was not allowed by VFP's PLAN and was thereby discharged [PACER Docs. 35-35, 35-36, and 35-59] and documents submitted by ASA and AAC sought to preserve and extend both the original 2nd and 3rd lien deeds of trust in Texas and did not provide for a single new 2nd lien mortgage in either Texas or New Mexico including the undivided interest in New Mexico not previously encumbered by any pre-petition mortgage. [PACER Doc. 35-60].

provisions of XXI's PLAN and VFP's PLAN nor the form required by §8.07 and were never executed. It is also undisputed that neither FAC, ASA, nor AAC ever sought clarification or other relief from XXI's PLAN and VFP's PLAN or retroactive modification of the automatic stays in XXI's BANKRUPTCY CASE or VFP's BANKRUPTCY CASE.

**B. ALL PRIOR JUDGMENTS FOR APPELLEES FOUNDED UPON ORIGINAL PRE-PETITION LIENS ARE LEGALLY NULL AND VOID**

36.    The judgments in the STATE COURT WRONGFUL FORECLOSURE SUIT holding that AAC's original pre-petition 3rd lien deed of trust No. 98-1254 survived confirmation of XXI's PLAN so as to uphold AAC's *prior* non-judicial foreclosure and resulting title to XXI's ORIGINAL TEXAS PROPERTIES simply ignored 11 U.S.C. §1141(c), the holdings in *In re Ahern Enter.* and *In re Burton Securities* and *got XXI's PLAN wrong* which the STATE COURT WRONGFUL FORECLOSURE SUIT courts lacked subject matter to do. These judgments violated XXI's discharge injunction rendering them legally null and void *ab initio* unable to support *res judicata* or collateral estoppel as explained *supra.*

37.    Without a valid 2nd lien deed of trust to foreclosure on XXI's ORIGINAL TEXAS PROPERTIES, not only did AAC's foreclosure *not* serve to cut off DFS's AJ LIEN as the District Court held in the 1ST SUMMARY JUDGMENT, but AAC's claim of title to and possession of XXI's ORIGINAL

25

TEXAS PROPERTIES as per AAC's EVICTION SUIT[58] are null and void as well. Similarly, without a valid foreclosure there was no 1) resulting *deficiency* owed to support the *in rem* deficiency action in the EQUIPMENT SUIT or the *in personam* deficiency action in RAF's DEFICIENCY SUIT ON ASA's ORIGINAL NOTES; and 2) the notice of default and acceleration given only in conjunction with the failed foreclosure cannot support AAC's non-judicial deficiency foreclosure on and resulting claim to the 75% undivided interest in THE 1½ SECTIONS as upheld in RAF's AND AAC's DECLARATORY JUDGMENT SUIT.

38.    Further, the only possible *correct* interpretation of XXI's PLAN is that *none* of the original pre-petition 1st, 2nd, and 3rd lien deeds of trust on XXI's ORIGINAL TEXAS PROPERTIES and mortgages on XXI's ORIGINAL NM PROPERTIES were specifically preserved as required by 11 U.S.C. §1141(c) and *In re Ahern Enter.*  Instead, XXI's PLAN expressly contemplated that FAC would be granted a *single new* 1st lien mortgage without power of non-judicial sale and ASA/AAC would be granted a *single new* 2nd lien mortgage without power of non-judicial sale on all of XXI's remaining real property including the undivided interest in New Mexico which was not encumbered by the original pre-petition mortgages (which DFS's AJ LIEN had been the

---

[58] Indentified in footnote 1(d) *supra*.

1st and only lien prior to confirmation of XXI'S PLAN) *only upon satisfaction*

*of the condition precedent of §8.07.*

39.    Since none of FAC's and ASA's/AAC's original liens were

specifically preserved[59] pursuant to 11 U.S.C. §1141(c) and *In re Ahern*

*Enter.*, *all of the original pre-petition real and personal property liens were*

*extinguished* and not replaced with any allowed lien as a matter of

bankruptcy law upon confirmation of XXI'S PLAN and VFP'S PLAN.  *Thus,*

*the only pre-petition liens to survive XXI's and VFP's confirmation were*

*DFS'S AJ LIEN* (subject only to THE VEIGEL'S homestead interest) *and*

*DFS's original purchase money liens on the irrigation equipment*

*currently held by APPELLANT.*

40.    As result of the lack of subject matter jurisdiction to *incorrectly*

interpret or disregard XXI'S PLAN, VFP'S PLAN, and the controlling agreed

orders over ASA's and AAC's objections thereto allowing ASA and AAC to

---

[59] VFP'S PLAN which was prepared and filed prior to ASA's and AAC's objections to XXI'S PLAN [PACER Doc. 35-20] and VFP'S PLAN [PACER Doc. 35-32] did reference liens on XXI's real property and expressly state "*All of said liens will be preserved and cross-collateralized*" [PACER Doc. 35-35 at page 5]. However such language conflicts with controlling provisions in XXI'S PLAN, and the negotiated agreed orders concerning ASA's and AAC's objection to XXI'S PLAN [PACER Doc. 35-21] and to VFP'S PLAN [PACER Doc. 35-33] which expressly provides in paragraph 15 that the agreed order (drafted and filed subsequent to the filing of VFP'S PLAN) controls over any conflict in VFP'S PLAN [PACER Doc. 35-33 at page 7]. Since, for example, ASA and AAC were only allowed a *single new* 2nd lien on all of XXI's remaining real property instead of both the original pre-petition 2nd and 3rd lien on a portion of XXI's property the conflict was resolved by the agreed orders which were negotiated to serve to harmonize XXI'S PLAN and VFP'S PLAN to ensure their consistency.

re-instate their original pre-petition security interest liens which were previously extinguished upon confirmation pursuant to 11 U.S.C. §1141(c) and *In re Ahern Enter.*, THE EQUIPMENT SUIT judgments involving 1) the *in rem* judicial foreclosure of XXI's and VFP's personal property; and 2) the subrogation to DFS's purchase money liens only subject to ASA's and AAC's original liens are legal nullities and void *ab initio* as are the judgments concerning the conversion and subrogation claims in this CASE. Without any valid security interest, APPELLEES had no basis for any interest in the converted property, no basis for any contractual waiver by DEBTORS, and no security interest in the property encumbered by DFS's purchase money lien or DFS's AJ LIEN.

41.    Similarly, the judgments in RAF'S NM FORECLOSURE SUIT upholding FAC's original 1st lien mortgage on XXI'S ORIGINAL NM PROPERTIES are also legally null and void *ab initio* since the original pre-petition mortgage granted to the FCBT was extinguished upon confirmation of XXI'S PLAN as a matter of bankruptcy law (as were the original mortgages granted to ASA and AAC) pursuant to 11 U.S.C. §1141(c) and *In re Ahern Enter.*

### C. ALL PRIOR JUDGMENTS FOR APPELLEES FOUNDED UPON ORIGINAL PRE-PETITION LOAN DOCUMENTS ARE LEGALLY NULL AND VOID

42.    Although 11 U.S.C. §1141(c) and *In re Ahern Enter.* are applicable to extinguish *liens and security interests* upon confirmation, they are not

applicable to similarly extinguish pre-petition *notes or claims*. Instead, pursuant to 11 U.S.C. §§524(a) and 1141(d) the confirmed plan effectively serves as a legal novation with the confirmed plan serving as the new contract between the debtor and its creditors/claimants superseding the pre-confirmation debts/claims previously evidenced, for example, by promissory notes, security agreements, and other loan documents.

43.    *"A confirmed plan constitutes a new arrangement between the debtor and creditors. In re Stratford of Tex., Inc., 635 F.2d 365, 368 (5[th].Cir.1981); In re Dow Corning, Corp., 456 F.3d 668, 676 (6[th].Cir.2006) ("the plan is effectively a new contract between the debtor and its creditors") ... . A plan's contents will be shaped by claims that arose prior to a debtor's bankruptcy petition; [h]owever,* **after plan confirmation, a creditor's rights are defined by the confirmed plan.** *In re Talbot, 124 F.3d 1201, 1209 (10[th].Cir.1997) ("[B]ecause `creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan.'") ... . Consequently, a pre-petition claim provided for in a confirmed plan is no longer simply a pre-petition claim. The claim is a right to payment arising from the confirmed plan.)" In re Cano,* 410 B.R. 506, 524 (Bankr.S.D.Tex.2009).

44.    Notwithstanding the prior holdings of the District Court and this Court in RAF's Suit on FCBT's Original Notes, the Equipment Suit, and RAF's Deficiency Suit on ASA's Original Notes that §8.07 of XXI's Plan and VFP's Plan were not applicable to allowed *claims* of FAC, ASA, and AAC, the only possible *correct* interpretation of XXI's Plan and VFP's Plan that does not render all of §8.07 completely superfluous is that FAC, ASA, and AAC as un-exempted holders of *conditionally* allowed new secured claims had to satisfy the condition precedent of §8.07 required to evidence and thereby give legal effect to not only their allowed security interests, but also their allowed ***claims*** which they admittedly attempted but failed to satisfy [PACER Docs. 35-59 and 35-60].

45.    A contract should be interpreted as to give meaning to *all* of its terms-presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous. *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.,* 220 F.3d 427, 431 (5th.Cir.2000). Since only DFS was exempted from complying with §8.07 of XXI's Plan and VFP's Plan by paragraph 6 of Exhibit A to the confirmation orders stating "*Diversified will retain all liens and security interests that secure its pre-petition claims*" (*i.e.,* DFS's judgment) [PACER Docs. 35-24 and 35-36 at page 4], §8.07 must be read to be applicable to the

*conditionally* allowed secured claims of FAC, ASA, and AAC or otherwise §8.07 is rendered completely superfluous which is not allowed under *Transitional Learning Cmty.*

46.    As intended, §8.07 of XXI's PLAN and VFP's PLAN make no distinctions between claims and security such as exempting holders of allowed secured claims from providing new note/loan documents evidencing their allowed claim, but requiring security documents evidencing their allowed security agreements and liens.  The section is titled "*Preparation of Documents Evidencing **Claims** and Security Interests*" and does *not* provide that only allowed security interests and liens have to be re-documented.[60]

47.    From a practical standpoint, XXI's PLAN and VFP's PLAN expressly required ***both*** new promissory notes and security agreements intended to serve as novations of the original contracts wherein non-bankruptcy debtors were parties.  The requirement for new loan documents was negotiated and intended not only to document the allowed secured claims of XXI's PLAN and VFP's PLAN but also to document the alteration of the rights and obligations of non-bankrupt debtors and guarantors to conform with the allowed secured claims which 11 U.S.C. §524(e) otherwise precludes.  *Zale Corporation v. Feld,* 62 F.3d 746, 760 fn 43 and 44 (5th.Cir.1995).

---

[60]  *See* full text at footnote 55 *supra*.

31

48.    For example, in exchange for getting DFS to agree to subordinate DFS'S AJ LIEN on the undivided interest in XXI's New Mexico property unencumbered by any original pre-petition mortgage, allowed FAC a new first lien on such interest lowering the overall allowed claim/loan to value ratio to less than 60%, and by agreeing to waive federal statutory Borrower Rights, FAC agreed not only to allow VFP'S PLAN to discharge FAC's claim against VFP but also release the other non-bankrupt co-makers/sureties (*i.e.*, the VEIGELS, and Veigel Cattle Company, and Veigel Farms Inc.) thereby leaving only XXI liable to FAC as the sole maker on the contemplated new note to FAC.  Hence, the discharge of FAC's claim in VFP'S PLAN and the provisions in §3.04 of XXI'S PLAN stating:

> The *Debtor* shall execute any and all documents **necessary to effectuate the terms** of the Modified Plan.
>
> FAC shall retire the *Debtor's* stock in the Association and *Debtor* shall waive "Borrowers Rights" under 12 U.S.C. §§2199 et. seq.

The language in XXI'S PLAN was not intended or was it sufficient to comply with 12 CFR §617.7010 requirements concerning waiver of Borrower's Rights that the "*document evidencing the waiver must clearly explain the rights the borrower is being asked to waive*."  Moreover, there is no mention that other non-bankrupt co-makers/sureties shall execute new documents or

waive their statutory Borrower Rights[61] which cannot otherwise be waived pursuant to 12 CFR §617.7010(a) since the loans were not guaranteed by the Small Business Administration or otherwise sold in conjunction with the waiver.

49.    XXI's PLAN was negotiated with FAC to *conditionally* provide an effective novation whereby the two notes originally given to FCBT and subsequently assigned to FAC were to be replaced and consolidated into a new allowed claim to be expressly evidenced by a *single* new note in the

---

61 "Borrower Rights" (*see* 12 U.S.C. §2199 *et. seq.* and applicable regulations found in 12 CFR part 617 and § 618.8325) under sections 4.13, 4.13A, 4.13B, 4.14, 4.14A, 4.14B, 4.14C, 4.14D, 4.14E, and 4.36 of the Farm Credit Act of 1971 (*see* 12 U.S.C. §2001 *et. seq.*), as amended by the Farm Credit Amendments Act of 1985 and the Agricultural Credit Act of 1987 include but are not limited to any and **all co-makers statutory right** to:

a)  two separate notices of right to request restructuring of distressed loan (*see* 12 U.S.C. §§2201 and 2202a and 12 CFR §617.7410);

b)  obtain a credit committee review of a denial of a restructuring request (*see* 12 U.S.C. §§2201 and 2202a, and 12 CFR §§617.7300, 617.7310, and 617.7420);

c)  have restrictions on foreclosure while a request for restructuring is pending (*see* 12 U.S.C. §2202a and 12 CFR§§617.7410 and 617.7425;

d)  cure default by offering to make only the delinquent installment payment and penalty amount prior to foreclosure to avoid continuation of foreclosure action notwithstanding prior acceleration of all the secured indebtedness (*see* 12 U.S.C. §2202d and 12 CFR §614.4514);

e)  opportunity of first refusal to lease or repurchase agricultural real estate that is acquired through a foreclosure on or voluntary conveyance by the borrower (*see* 12 U.S.C. §2219a and 12 CFR §§617.7600, 617.7610, and 617.7615);

f)  **have compliance with certain contractual provisions and waiver requirements necessary prior to any loan sales to other non-System institution mortgagees** (*see* 12 CFR §614.4336); and

g)  **have certain requirements met for there to be effective waiver of any "Borrower Right"** (*see* 12 CFR §§ 617.7010 and 617.7015, 69 FR 10908 and 70 FR 18965).

form prescribed by §8.07 executed only by XXI with a different 1) maturity date,[62] 2) payment date and amount,[63] 3) security in the form of a first lien on all of XXI's remaining real estate at confirmation after the sale of the tract to the Snipes including the additional undivided interest in New Mexico not previously encumbered only by DFS's AJ Lien; and 4) loan covenants (*e.g.*, no right for FAC to accelerate the note upon the death of a co-maker as provided by the original pre-petition notes as modified).

50.    As held in *Zale Corporation v. Feld,* 62 F.3d 746, 760 fn 43 and 44 (5th.Cir.1995), 11 U.S.C. §524(e) precluded XXI'S PLAN and VFP'S PLAN from releasing co-makers, sureties, and guarantors.   Hence, the practical necessity for §8.07 of XXI'S PLAN requiring new loan and security documents between only XXI and FAC, including a single new note to FAC executed only by XXI, necessary to replace and release the original co-makers as consideration for the additional security and waiver of Borrower Rights by the sole maker of the new allowed claim.   As a result of FAC's attempt [PACER Doc. 35-59] but failure to comply with §8.07 of XXI's

---

[62] XXI'S PLAN provided a maturity date of 11/1/2020 (20 years from November 1, 2002) whereas both pre-petition notes as modified had a maturity of 12/1/2019.

[63] XXI'S PLAN provided for 40 semi-annual fully amortized principle and interest *equal* payments on May 1 and November 1 of $138,283.46 whereas both pre-petition notes as modified provided for 40 *unequal* semi-annual payments on June 1 and December 1 as loan number 90400 provided for "Springfield" amortization requiring equal principal payments of $18,318.68 plus accrued interest resulting in declining payment amounts.

PLAN and the subsequent judgments in RAF'S SUIT ON FCBT'S ORIGINAL NOTES *incorrectly* interpreting and thereby modifying XXI'S PLAN to exempt FAC from the requirements of §8.07 of XXI'S PLAN, RAF was awarded recovery against *all* of the co-makers of the two original notes given to FCBT[64] which were to have been discharged and replaced with a single *new* note pursuant to §8.07 of XXI'S PLAN which would have precluded judgment and execution against THE VEIGELS and their undivided 25% interest in THE 1½ SECTIONS that was also at issue in RAF'S AND AAC'S DECLARATORY JUDGMENT SUIT wherein RAF's execution was upheld. Without new loan documents releasing XXI's original co-makers, such co-makers along with XXI each still retain their Borrower's Rights which RAF has refused to comply while obtaining judgments in RAF'S SUIT ON FCBT'S ORIGINAL NOTES and RAF'S NM FORECLOSURE SUIT.

51.    Given the expressed statements in §3.04 XXI'S PLAN regarding the execution of new documents "*necessary to effectuate the terms of*" XXI'S PLAN, the practically and necessity for §8.07 of XXI'S PLAN for releasing co-makers and complying with waiver requirements, FAC's timely attempt

---

[64] FAC only assigned RAF's predecessor Rabo AgServices, Inc. ("RAS") its interest in the original notes and security given to FCBT as modified pre-petition without recourse. Significantly, FAC did not assign any rights or interests under XXI'S PLAN presumably because FAC knew it had not complied with §8.07 of XXI'S PLAN and as such had no rights or interests to assign.

35

to comply with §8.07 evidencing its contemporaneous interpretation of its duty to satisfy such condition precedent, and FAC's non-recourse assignment of just the original pre-petition notes and security to RAS, it is obvious that XXI's PLAN required FAC to comply with §8.07 of XXI's PLAN. The non-bankruptcy courts lacked subject matter jurisdiction to *wrongly* interpret and modify XXI's PLAN to exempt FAC from complying with §8.07 of XXI's PLAN and disregard the permanent discharge injunction. As such, there is another basis, pursuant to the cases cited in paragraphs 25 - 27 *supra*, that judgments in RAF's SUIT ON FCBT'S ORIGINAL NOTES are legal nullities and void *ab initio* and unable to support 1) domestication of such judgment in New Mexico; 2) RAF's execution on THE VEIGELS' 25% undivided interest in THE 1½ SECTIONS; 3) *res judicata* in RAF's AND AAC's DECLARATORY JUDGMENT SUIT judgment wherein RAF's execution was upheld; 4) res judicata in RAF's & AAC's EVICTION SUIT ON THE 1½ SECTIONS; and 5) *res judicata* in RAF's NM FORECLOSURE SUIT judgment allowing RAF to collect on RAF's domesticated judgment(s). Such tainted execution and judgments founded upon judgments in RAF's SUIT ON FCBT'S ORIGINAL NOTES are also legally null and void *ab initio* as well as result of incorrect interpretations of XXI's PLAN.

36

52.    Similarly, there is another basis that the judgments in the STATE COURT WRONGFUL FORECLOSURE SUIT, AAC'S EVICTION SUIT, THE EQUIPMENT SUIT, RAF'S AND AAC'S DECLARATORY JUDGMENT SUIT, RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES, RAF'S & AAC'S EVICTION SUIT ON THE 1½ SECTIONS, THE TEXAS DEFICIENCY SUIT ON ASA'S & AAC'S NOTE, THE FRIEMEL SUIT, and this CASE are legal nullities and void *ab initio* for lack of subject matter jurisdiction as a result of non-bankruptcy courts' *incorrect* interpretations and modifications of XXI'S PLAN and VFP'S PLAN by improperly exempting ASA/AAC from the condition precedent requirements of §8.07 of the plans in violation of the permanent discharge injunctions; and significantly, the controlling subsequent July 15, 2003 bench ruling by Judge Felsenthal [PACER Doc. 35-41] expressly requiring *another new* note to be provided to XXI and VFP for execution pursuant to the October 21, 2002 settlement of the BANKRUPTCY ADVERSARY [PACER Doc. 35-40] in order to replace the new note previously required by §8.07 of the plans.

53.    Not only did §8.07 of XXI'S PLAN and VFP'S PLAN require ASA/AAC to submit new loan and security documents to THE DEBTORS for execution to evidence and effectuate the terms for ASA's/AAC's *conditionally* allowed combined new secured claim (which ASA/AAC

37

contemporaneously attempted but failed to comply in form or substance [PACER Doc. 35-60]), but so did Judge Felsenthal's controlling bench ruling. In his bench ruling on ASA's/AAC's motion to clarify and enforce the October 21, 2002 settlement [PACER Doc. 35-41 page 5 at lines 22-23], he ruled that transcript of his ruling *"would govern"* [PACER Doc. 35-41 page 13 at line 13] over the subsequent order being drafted [PACER Doc. 35-42] that did not expressly mention a new note. However, in the bench ruling Judge Felsenthal repeatedly referred to a *"**new note**"* required for the restructured amount of $1.5 million [PACER Doc. 35-41 page 7 at lines 7, 9 (*"no reason on the **new note** for worrying about a delinquent calculation"*), 19-21; page 8 at lines 1, 10, 23-24; page 9 at line 4 (*We've reached a **new note**.*), 9-11, and page 11 at lines 10-11 (*"obviously there has to be a note of the restructured amount"*].

54.     ASA/AAC never attempted to comply with Judge Felsenthal's bench ruling requiring a single *new note* from THE DEBTORS. Just as §8.07 of XXI'S PLAN and VFP'S PLAN was to effectively serve as a legal novation of the four original notes and numerous other pre-petition loan and security documents with restrictive unreasonable, if not illegal, loan convents (*e.g.*, requiring co-makers to purchase all crop inputs from ASA/AAC, follow ASA/AAC agronomic advice, prohibiting co-makers from engaging custom

farming or harvesting services or utilizing on farm grain storage, and subjecting such credit to undisclosed changes in ASA's/AAC's credit policies, etc.), the bench ruling required an effective novation of the new note ASA/AAC were to have previously presented to comply with §8.07. As with XXI'S PLAN, VFP'S PLAN, and related orders and injunctions, Judge Felsenthal's bench ruling is entitled to *res judicata* effect.

55.    The non-bankruptcy courts in the cases listed in paragraph 52 *supra* lacked subject matter jurisdiction to **wrongly** interpret and thereby modify XXI'S PLAN and VFP'S PLAN to exempt ASA/AAC from complying with §8.07 and to disregard the permanent discharge injunctions or disregard Judge Felsenthal's bench ruling requiring another new note to evidence the conditionally allowed secured claim that was negotiated and purposefully designed to replace the four original pre-petition notes discharged by XXI'S PLAN and VFP'S PLAN.

56.    As such, there is another basis, pursuant to the cases cited in paragraphs 25 - 27 *supra*, that such judgments founded upon the four original pre-petition discharged notes are legal nullities and void *ab initio* and unable to support *res judicata* or collateral estoppel in this CASE or any other. Such judgments are also void as to the personal liability of XXI's and VFP's guarantors as there is no valid debt/claim to guarantee as the result of

ASA's/AAC's failure to comply with Judge Felsenthal's bench ruling requiring a new note for $1.5 million.

## D. FAILURE TO COMPLY WITH FED. R. BANKR. P. RULE 3001 AND RESULTING FRAUD ON THE BANKRUPTCY COURT IS A FATAL DEFECT TO CLAIMS THAT WERE TO BE ALLOWED FOR FAC, ASA, AND AAC

57. To the extent, if any, that any prior judgment for either APPELLEE including the summary judgments in this CASE was founded upon a claim otherwise allowed FAC, ASA, or AAC by XXI's PLAN or VFP's PLAN, such claim is defective and still subject to a motion for contempt by THE DEBTORS or parties in interest. Failure to comply with FED. R. BANKR. P. RULE 3001(e) is a "*fatal defect*" to an allowed claim which cannot be cured post-confirmation and which is subject to civil contempt pursuant to 11 U.S.C. §105(a) (with broad range of remedies including ordering judgment creditors to release their judgments obtained in other courts). *In re Sanchez*, 372 B.R. 289, 318-319 (Bankr.S.D.Tex.2007). Even a renamed claimant must comply with FED. R. BANKR. P. 3001(e). *Southern Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 229 B.R. 119, 121 (E.D.Tex.1999).

58. FCBT's assignee,[65] First Ag Credit, FCS ("FAC FCS#1") filed proof of claims in both XXI's and VFP's bankruptcies.[66] Subsequent to the proof

---

[65] *See* Case No. 00-20877-bjh-11 PACER Doc. 150-16 attached as Exhibit 43.

[66] *See* Case No. 00-20877-bjh-11 PACER Doc. 151-1 and 151-2 attached as Exhibits 44 and 45 respectively.

of claims and while the bankruptcies were pending confirmation, FAC FCA#1 changed it's name to First Ag Credit, FLCA ("FAC FLCA") and became a wholly owned subsidiary of a newly formed First Ag Credit, FCS ("FAC FCS#2")[67] without complying with FED. R. BANKR. P. 3001(e) or otherwise giving any notice to THE DEBTORS, the bankruptcy court, or other claimants.   Without such notice or knowledge, §3.04 of XXI's PLAN *conditionally* provided for an allowed secure claim only to FAC FCA#1 which had filed the proof of claims.   The failure of FAC FCS#1, FAC FLCA, and/or FAC FCS#2 to comply with FED. R. BANKR. P. 3001 is a *fatal defect* to such claim that cannot now be cured and which is still subject to contempt even if FAC FCS#1 or FAC FLCA had satisfied the condition precedent of §8.07 of XXI's PLAN.

59.    Similarly, ASA filed joint proof of claims in VFP's and XXI's bankruptcies falsely asserting that ASA was also known as AAC.[68] Subsequent to the filing of the proof of claims and while the bankruptcies were pending confirmation, ASA assigned all of its *remaining* interests[69] to

---

[67] *See* Case No. 00-20877-bjh-11 PACER Doc. 151-12 attached as Exhibit 46.

[68] *See* Case No. 00-20877-bjh-11 PACER Doc. 151-10 and 151-5 attached as Exhibit 67 respectively.

[69] *See* PACER Doc. 27-6 at pages 83 – 85 and Case No. 00-20877-bjh-11 PACER Docs. 149-12 and 149-23 attached as Exhibits 57 and 65 respectively.   Subsequent to the settlement of the BANKRUPTCY ADVERSARY, APPELLEES finally judicially admitted in THE EQUIPMENT SUIT and RAF's DEFICIENCY SUIT ON ASA's ORIGINAL NOTES, that ASA also sold all loan advances to AAC as they were made between 1997 and 1999.

41

AAC without complying with FED. R. BANKR. P. 3001(e) or otherwise giving any notice to THE DEBTORS, the bankruptcy court, or other claimants. Without notice or knowledge that ASA no longer held *any* debt or security interests in the original loans, the agreed orders concerning ASA's and AAC's objections, §3.05 of XXI'S PLAN, and §3.04 of VFP'S PLAN *conditionally* provided for an allowed combined secure claim to *both* ASA and AAC. The failure of ASA and/or AAC to comply with FED. R. BANKR. P. 3001 is a *fatal defect* to such claim that cannot now be cured and which is subject to contempt even if ASA or AAC had satisfied the condition precedent of §8.07 of XXI'S PLAN and VFP'S PLAN.

60.    Furthermore, not only did ASA's and AAC's failure to comply with FED. R. BANKR. P. 3001 result in ASA receiving allowed claims which it was not entitled after it sold and assigned all of its interest to AAC prior to confirmation, but ASA and AAC committed bankruptcy fraud by filing proofs of claims under the penalty of perjury indicating that ASA and AAC were one in the same legal entities and committed fraud on the bankruptcy court throughout the bankruptcies including the settlement of the BANKRUPTCY ADVERSARY wherein ASA's sole consideration was a

[*see* Case No. 00-20877-bjh-11 PACER Docs. 153-07 at pages 7 and 12 attached as Exhibit 72 and Case No. 00-20877-bjh-11 PACER Docs. 153-09 at page 3 attached as Exhibit 74].

purported write-down of its claims against THE DEBTORS, and the original debts owed by THE DEBTORS' non-bankrupt co-makers and guarantors to $1.5 million.

61.    To establish a fraud upon the Court, there must be a showing that the conduct was (1) committed on the part of an officer of the court; (2) directed to the judicial machinery itself; (3) intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) a positive averment or a concealment when one is under a duty to disclose; and (5) deceptive of the court. *Workman v. Bell,* 227 F.3d 331, 336 (6th.Cir.2000). As an officer of the court, a lawyer must deal with the court with honesty and integrity. If a lawyer betrays this duty of loyalty to the court, the lawyer is deemed to have perpetrated a fraud upon the court. *Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d.Cir.1972). However, only the most egregious misconduct resulting in material subversion of the legal process, such as the fabrication of evidence by a party in which an attorney is implicated or an attorney's unconscionable plan or scheme designed to improperly influence the court in its decision that could not have been exposed within the one-year window provided by Rule 60(c) will constitute fraud on the court. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th.Cir.1978).

43

62.    Relief from a judgment or order may be granted pursuant to Fed. R. Civ. P. Rule 60(d)(3) to set aside a judgment for fraud on the court. *Blumberg v. NSSI Liquidating Trust,* 2009 WL 2998516, at *4 - *7 (N.D.Tex.2009).    An independent action may be filed, or a court may conduct its own investigation to determine if it has been defrauded and exercise its equitable power to set aside a fraudulent judgment to maintain the integrity of the courts and safeguard the public. *United States v. Smiley,* 553 F.3d 1137, 1142 (8th.Cir.2009).    If there is fraud on a court, that court may *sua sponte* take action to set aside any judgment entered.    *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d.Cir.1960).

63.    ASA's and AAC's bankruptcy counsel 1) filed false proof of claims indicating to the bankruptcy court that ASA and AAC were one in the same and both held combined claims; 2) failed to comply with FED. R. BANKR. P. 3001 and actively concealed from the bankruptcy court that ASA no longer held any interest in the original loans; and 3) continuously represented to the bankruptcy court that ASA held valid claims and interests in filing bankruptcy motions and objections and obtaining orders thereon.    After APPELLEES' judicial admissions at trial in 2007, such actions can now only be viewed as a fraud on the court perpetuated by counsel to conceal ASA's

44

lack of standing to the bankruptcy court in obtaining orders concerning its allowed secured claims [PACER Docs. 35-19, 35-21, 35-31, and 35-33] and the bankruptcy court's acceptance [PACER Doc. 35-40] and clarification of the settlement of the BANKRUPTCY ADVERSARY [PACER Docs. 35-41 and 35-42].

64.    This resulted in not only allowed claims for ASA which it would not have been entitled and which served as ASA's sole consideration for settlement of the BANKRUPTCY ADVERSARY against it, but arguably served to precluded recovery by unsecured allowed claimants while evidencing debt owed to ASA secured by its original pre-petition 2nd lien deed of trusts and mortgages still of record without record of any assignment to AAC.  As such, all bankruptcy orders related to the allowed combined claim of ASA and AAC and the settlement of the BANKRUPTCY ADVERSARY are still subject to being sat aside as result of civil contempt under 11 U.S.C. §105(a) and/or an action for fraud on the bankruptcy court which would also serve to undermine the foundation of, if not void, release, or set aside the judgments for APPELLEES that the District Court gives *res judicata* effect in this CASE.

65.    Until there is a full adjudication on the merits of THE DEBTORS' and interested parties' claims involving violations of FED. R. BANKR. P. 3001 with respect to FAC, ASA, and AAC and/or fraud upon the bankruptcy court

by ASA's and AAC's bankruptcy counsel, the judgment in this CASE and APPEAL are subject to being set aside if they are not otherwise null and void *ab initio* as result of the lack of subject matter jurisdiction for non-bankruptcy courts to incorrectly interpret XXI's PLAN and/or VFP's PLAN and thereby violate the permanent discharge injunctions therein. Hence a need to reverse and remand with instructions to also require consideration of these issues on the merits by the bankruptcy court.

### E. THE VEIGELS' HOMESTEAD INTEREST ALSO SERVES AS A FUNDAMENTAL ERROR TO NULLIFY AND VOID PRIOR JUDGMENTS

66.    In addition to or as an alternative to violations of XXI's PLAN and VFP's PLAN and related discharge injunctions rendering prior judgments for Appellees null and void, under Texas law a judgment involving "fundamental error" can also be attacked either by a "direct attack" or a "collateral attack" that seeks to set aside or otherwise avoid the effect of such judgment. *Texas Dep't of Transp. v. T. Brown Constructors, Inc.,* 947 S.W.2d 655, 659 (Tex.App.-Austin.1997, pet. denied). "Fundamental error" in a judgment occurs where "*the court lacked jurisdiction or that the public interest is directly or adversely affected as that interest is declared in the statutes or the Constitution of Texas.*" *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982).

67.    Protection of homestead rights has consistently been a longstanding fundamental policy of Texas law requiring courts to liberally construe the constitutional and statutory provisions in order to protect the public and governmental interests. *In re Moody,* 77 B.R. 580, 590 (S.D.Tex.1987). Furthermore, "[t]*he constitutional provision against forced sales of homesteads is of a mandatory character and it has been held with considerable unanimity that forced sales of property constituting a homestead are void and subject to collateral attack, even when the homestead character of the property is not affirmatively disclosed by the record.*" *Curtis Sharp Custom Homes, Inc. v. Glover,* 701 S.W.2d 24, 26-27 (Tex.App.-Dallas.1985, writ ref'd n.r.e.) and *Mallou v. Payne & Vendig,* 750 S.W.2d 251, 255-257 (Tex. Ct. App.-Dallas.1988, no writ)(holding "*(1)* [a] *trial court is without jurisdiction to order a homestead sold to pay ordinary debts; (2) any such order is a nullity; (3) no title would pass to a* "*purchaser*" *at such a sale whether the* "*purchaser*" *knew the property was a homestead or not; and (4) any such order or sale can be attacked either directly or collaterally. It naturally follows that any attempt by the trial court to accomplish what it is without jurisdiction to do, and what the constitution specifically prohibits it from doing, constitutes a clear abuse of discretion as a matter of law*").

47

68.    The Texas Constitution provides that homestead property is exempt from forced sale to pay debts, except for certain specified categories of debts not applicable in this CASE and APPEAL.  No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married.  All pretended sales of the homestead involving any condition of defeasance shall be void.  TEX. CONST. art. XVI, §50(c). However, Texas prohibits only those pretended sales that include a condition of defeasance which permits the seller to reclaim the title to the property conveyed after the loan is repaid.  *In re Perry*, 345 F.3d 303, 313 (5th.Cir. 2003).    An option to repurchase homestead property is a sufficient "condition of defeasance" to void a pretended sale of homestead property. *Mosher Steel & Mach. Co. v. Nash,* 6 S.W.2d 158, 162 (Tex.Civ.App.-Dallas.1928, writ dism'd w.o.j.).

69.    The words not "ever be valid" in TEX. CONST. art. XVI, §50(c) mean "void."  The purpose of the homestead exemption is to provide a secure home for the family against creditors.  This protection from creditors advances the stability and the welfare of the State.  The forced sale of a homestead property for a debt not specifically allowed by the constitution is

void, and it confers upon the purchaser no rights in the property. It is well settled in Texas that in order to establish homestead rights, there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead. By the mere act of using and enjoying a property as a home, a person qualifies for the protections mandated by the Texas Constitution. Once a property has been dedicated as a homestead, it can lose such designation only by abandonment, alienation, or death. *Salomon v. Lesay*, 369 S.W.3d 540, 554-555 (Tex.App.-Hous.[1 Dist.].2012). A claim of homestead is not dependent on an unqualified fee ownership of the land involved. A homestead may attach to any possessory interest. *In re Perry*, 345 F.3d 303, 314 (5th.Cir. 2003).

70.    It is undisputed that Robert "Bob" W. Veigel ("RWV") was born and raised and is the third generation of his family to farm THE ORIGINAL VEIGEL FARM (*i.e.*, Sections 59, 60, 61, and 62 Blk K-4, Deaf Smith County, Texas). It is undisputed that THE VEIGELS' remodeled at their expense and resided exclusively and continuously in their family home located on Section 61 since they were married in 1959 until they were evicted by AAC in 2006. It is undisputed that prior to the formation of XXI, RWV held legal title as trustee of and equitable title as income beneficiary of his father's testamentary Veigel Family Trust which owned an undivided ½ interest in

49

THE ORIGINAL VEIGEL FARM except for THE 1½ SECTIONS,[70] was to inherit a similar interest under his mother's will, owned an undivided ¼ interest in THE 1½ SECTIONS and owned 200 acres of adjoining Section 42.

71.    It is undisputed that when XXI was formed and real property conveyed to it including THE VEIGELS' home, THE VEIGELS maintained and continued their exclusive possession and use of their home under a written lease[71] and none of the XXI related parties ever intended THE VEIGELS to lose their homestead interests.  It is undisputed that prior to accepting deeds of trust from XXI, FCBT, ASA, and AAC had actual and constructive knowledge that THE VEIGELS continued to reside exclusively in their home on Section 61 and yet neither FCBT, ASA, or AAC ever sought to protect the priority of their mortgage interests by requiring either waiver or designation and segregation of THE VEIGELS' homestead interests or subordination of their lease and right of possession to their home.  *Ontiveros v. Mbank Houston, N.A.,* 751 F.Supp. 128, 130 (S.D.Tex.1990).  Also, it is undisputed that when THE VEIGELS' first designated their homestead in 2004 [PACER Doc. 35-67],[72] it included their residence and adjoining portions of

---

[70]  *See In re Eskew,* 233 B.R. 708, 710-711 (Bankr.W.D.Tex.1998) (a remainderman with a present right to possession sufficient to impress the property with his homestead interest *from the time he began occupying the property as his homestead*).

[71]  Case No. 00-20877-bjk-11 PACER Doc. 148-17 attached as Exhibit 35

[72]  Also *see* Case No. 00-20877-bjk-11 PACER Doc. 152-17 attached as Exhibit 33.

Sections 59 and 60 which THE VEIGELS owned an undivided fee simple interest as well as portions of Sections 42, 61, and 62.

72.    Under these undisputed facts alone, THE VEIGELS established their homestead rights even though title to THE VEIGELS' home was conveyed to XXI in 1994 to facilitate the mortgage from the FCBT. *In re Perry*, 345 F.3d 303, 315 (5th.Cir.2003) (leasehold or tenancy at will can support homestead rights against all creditors except those with title or *superior* interest in the property) and *Dillard v. Duke,* 107 S.W.2d 414, 418 (Tex.Civ.App.—Waco.1937, no writ) (son held homestead interest in *both* the cultivated tract of land in which he had an undivided one-half interest *and also part of adjoining tract owned by his mother on which he lived*). However, the first partial summary judgment in the STATE COURT WRONGFUL FORECLOSURE SUIT[73] expressly held in paragraph 55 that adjoining portions of Sections 59 and 60 which THE VEIGELS owned an undivided fee simple interest were not at issue and denied THE VEIGELS' homestead claim for lack of any title or interest in the property conveyed to XXI and subsequently foreclosed by AAC.

---

[73]    *See* paragraphs 53 – 67 of *Terra XXI Ltd. et. al. v. Ag Acceptance Corp. et. al.,* NO. CI-04B-011, unpublished order (222nd District Court Tex.2/8/2006) *see* PACER Doc. 10-13.

118 of 143

73.    Not only did the state court lack subject-matter jurisdiction to modify

XXI's PLAN to uphold AAC's non-judicial foreclosure on its original 3rd lien

deed of trust No. 98-125*4* as discussed *supra*, but it committed a

fundamental error by disregarding THE VEIGELS' fee simple interest in order

to deny THE VEIGELS' homestead claim which can still be collaterally

attacked as being a legal nullity and void *ab initio*. Further, pursuant to TEX.

PROP. CODE §§ 41.021 - 41.023 a foreclosure sale conducted on an

unsegregated homestead estate is a nullity. *Mallou v. Payne & Vendig*, 750

S.W.2d 251, 255-257 (Tex. Ct. App.-Dallas.1988, no writ).

74.    An execution sale deed issued in violation of judgment debtor's

homestead rights is also a void document *"even as to persons not parties to

it, and its invalidity may be asserted by anyone whose rights are affected."*

*Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 247

(Tex.App.-Houston[14th Dist.].1996, no writ).    Under Texas law, the

District Court similarly committed a fundamental error in allowing RAF to

execute on THE VEIGELS' interest in THE 1½ SECTIONS in RAF'S SUIT ON

FCBT'S ORIGINAL NOTES and upholding RAF's execution and AAC's

foreclosure and title claims to THE 1½ SECTIONS in RAF'S & AAC'S

DECLARATORY JUDGMENT SUIT on the basis that THE VEIGELS' 2004

designation was denied in the STATE COURT WRONGFUL FORECLOSURE SUIT

and THE VEIGELS' 2007 homestead designation[74] was contingent upon

unsuccessful appeal of the STATE COURT WRONGFUL FORECLOSURE SUIT.[75]

75.    Such fundamental error(s) provides another basis for not only THE

VEIGELS but APPELLANT and others affected to collaterally attack AAC's

foreclosure and title claim to XXI's ORIGINAL TEXAS PROPERTIES and

resulting deficiency as well as AAC's foreclosure and RAF's execution and

title claims to THE 1½ SECTIONS and all of the related judgments as being

null and void.

76.    In addition to THE VEIGELS' homestead based on the undisputed facts

and the holdings in *In re Perry*, 345 F.3d 303, 315 (5th.Cir.2003) and *Dillard

v. Duke,* 107 S.W.2d 414, 418 (Tex.Civ.App.—Waco.1937, no writ) *supra,*

XXI's bankruptcy case should/can be reopened to clarify XXI'S PLAN or

otherwise consider whether or not XXI's bankruptcy estate was subject to or

included THE VEIGELS' homestead interest and possession claims and

whether such claims were allowed to THE VEIGELS as Class Ten claimants

under XXI'S PLAN.    If a former debtor fails to disclose a claim (*e.g.,* THE

VEIGEL'S homestead interest), any party in interest can move the bankruptcy

court to reopen the case to address the claim pursuant to 11 U.S.C. §350(b)

---

[74] *See* Case No. 2:05-cv-00314-J PACER Doc. 79 attached as Exhibit 34

[75] *See* paragraph 62 of *Ag Acceptance Corp. v. Veigel,* NO. 2:06-CV-272, 2007 WL
6889358 at \*7, 2007 U.S. Dist. LEXIS 63763, (N.D.Tex., 8/29/2007).

and FED. R. BANKR. P. RULE 5010. *In re Johnson*, 2010 WL 3491187 *2 (Bankr.N.D.Tex.2010).

77.    As part of such consideration, there is an outstanding issue as to whether or not THE VEIGELS' deeds to XXI were a constitutionally prohibited pretend sale of their homestead property and whether such property was ever encumbered by XXI's deeds of trust to FCBT, ASA, and AAC or a part of XXI's bankruptcy estate, given that XXI was formed to hold family properties conveyed to it for an expressly limited period[76] essentially matching the original 20 year term of the original mortgage loan from FCBT with a condition of defeasance allowing THE VEIGELS the option to reacquire any property including homestead property upon termination with FCBT's knowledge and consent and without requirement of waiver or designation and segregation of homestead interest.

78.    *See Ortega v. LPP Mortgage, Ltd.,* 160 S.W.3d 596, 602 (Tex.App.Corpus Christi.2005, pet. denied) (if a mortgagee advances funds secured by a lien on a homestead with knowledge or notice of a pretended sale of such homestead to a farming partnership involving any condition of defeasance, *such pretended sale is void and the mortgagee's lien thereon is*

---

[76] §7.01 of XXI's partnership agreement provided that XXI would terminate on 12/31/2014 and §7.05 allows a partner to bid and purchase all or a portion of XXI's assets upon liquidation (*see* Case No. 00-20877-bjk-11 PACER Doc. 152-17 attached as Exhibit 36).

54

*invalid as partnership lacked title to mortgage*); *In re Ritter,* 2009 Bankr.

LEXIS 954 (Bankr.E.D.Tex.2009) (where in order to evade the homestead

protections which otherwise would have precluded mortgage of chicken

farm on a portion of homestead property the mortgagee suggested and

mortgagor implemented conveyance of chicken farm to wholly owned

corporation, such mortgage lien was null and void; and *Laster v. First*

*Huntsville Properties Co.,* 826 S.W.2d 125, 130 (Tex.1991) (any attempt to

mortgage homestead property, except as approved by the Texas

Constitution, is void and can never have any effect, *even after the property is*

*no longer impressed with the homestead character*).

## II. APPELLEES CONTINUE TO PLAY FAST AND LOOSE WITH THE COURTS TO SUIT THE EXIGENCIES OF THEIR SHIFTING SELF INTERESTS REGARDING THEIR LEGAL STANDING

79.    As raised in Issue Nine at footnote 53 and Issue Eleven at footnote 59

of APPELLANT'S BRIEF and Reply Point Three at footnote 19 and at page 12

of APPELLANT'S REPLY BRIEF and as addressed in paragraphs 13 and 57 – 64

and footnotes 20 – 21, and 46 *infra*, since XXI's and VFP's bankruptcy

petitions through this APPEAL, APPELLEES and RAF's predecessors assisted

by their counsel have successfully taken inconsistent, if not fraudulent,

positions as to their respective legal standing with the courts to suit the

exigencies of APPELLEES' shifting self interest of the time.

80.     APPELLANT'S BRIEF and APPELLANT'S REPLY BRIEF essentially argue that prior judgments in either RAF'S SUIT ON FCBT'S ORIGINAL NOTES or the EQUIPMENT SUIT and RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES now serve as *res judicata* and that APPELLEES are judicial estopped from denying that they have previously judicially admitted that only one APPELLEE could hold any contractual right including waiver of conversion claims or have any claim or interest potentially affected by APPELLANT'S right of subrogation to DFS'S AJ LIEN. APPELLEE'S RESPONSE BRIEF simply ignores and does not address APPELLANT'S points presumably in hopes that this Court will again fail to distinguish between APPELLEES' legal standing.

81.     However, another *elephant in the room* that has not been, but must be addressed *sua sponte* by this Court, is that there is not only a question of material fact regarding each APPELLEE'S separate legal standing to assert any claim or defense afforded by any judgment, contractual debt and security, or title interest which would preclude the summary judgments in this CASE; but, there are also questions raised as to whether the District Court otherwise had subject matter jurisdiction in the prior suits to enter valid judgments it affords *res judicata* effect in this CASE and which APPELLEES rely in this APPEAL.

56

82.    For example, disregarding Section I *supra* and assuming *arguendo* that FAC did not violate FED. R. BANKR. P. RULE 3001, was exempt from satisfying the condition precedent set forth in §8.07 of XXI'S PLAN, and RAF did not otherwise violate XXI'S PLAN and discharge injunction in bringing RAF'S SUIT ON FCBT'S ORIGINAL NOTES; did RAF have legal standing and the District Court subject matter jurisdiction given the facts that 1) FAC only assigned the original notes and security interests to RAF's predecessor;[77] and 2) FAC did not assign and thereby still retains its rights and interests granted under XXI'S PLAN which serves as the new contract at least as between FAC and XXI?  If not, only FAC, and not RAF, would have legal standing to bring claims under XXI'S PLAN rendering the judgment in RAF'S SUIT ON FCBT'S ORIGINAL NOTES null and void *ab initio* for lack of subject matter jurisdiction.

83.    Similarly disregarding Section I *supra* and assuming *arguendo* that ASA and AAC did not violate FED. R. BANKR. P. RULE 3001, were exempt from satisfying the condition precedent set forth in §8.07 of XXI'S PLAN and VFP'S PLAN, and RAF did not otherwise violate XXI'S PLAN, VFP'S PLAN, and related discharge injunctions in bringing RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES and the EQUIPMENT SUIT; did RAF have legal

---

[77] *See* Case 00-20877-bjh-11 PACER Doc. 152-16 attached as Exhibit 50.

standing and the District Court subject matter jurisdiction given the facts that

1) in RAF'S SUIT ON FCBT'S ORIGINAL NOTES, RAF successfully argued

and held that AAC, not RAF, still held all of the interests in the notes and

security originally given to ASA;[78] 2) as shown in this CASE, there are no

filings of record showing that AAC ever reassigned any interest back to

RAF or its predecessors;[79] and 3) in the January 27, 2006 deposition of AAC

through its representative Robert Stevens, APPELLEES' council stipulated[80]

that AAC still held all the notes and security interests originally given to

ASA and that RAF was just AAC's servicer?[81]  If not, only AAC, and not

RAF, would have legal standing to bring *in rem* or *in personam* deficiency

claims or contractual defenses, if any, under XXI'S PLAN and VFP'S PLAN,

or have legal standing to assert claims or defenses related to APPELLANT'S

right of subrogation to the DFS judgment rendering the judgments in THE

EQUIPMENT SUIT, RAF'S DEFICIENCY SUIT ON ASA'S ORIGINAL NOTES, and

in this CASE null and void *ab initio* for lack of subject matter jurisdiction.

---

[78] *See* Exhibits 56, 57, 59, 60, 61, 62, 65, and 66.

[79] *See* PACER Doc. 27-6 at pages 83 – 85.

[80] *See* Exhibit 71.

[81] However, RAF never brought any suit as servicer for AAC or otherwise on AAC's behalf.  Instead, APPELLEES successfully claimed RAF was the sole owner and holder all the notes and security interests originally given to ASA, assigned to AAC, and then reassigned back to ASA sometime either in October 2002 or October 2003. *See* footnotes 20 – 21, and 46 *supra*.

84.     Under U.S. CONST. ART. III, §2, cl. 1, federal courts are courts of limited jurisdiction and are only granted jurisdiction over claims between plaintiffs and defendants if they present actual "cases" or "controversies." *Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). *"Of the doctrines that have evolved under Article III ... the requirement that the litigant have standing is perhaps the most important."* *Henderson v. Stalder,* 287 F.3d 374, 378 (5th.Cir.2002). *"Under Lujan, courts must carefully examine whose injury is at issue, and to whom the recovery will go. If the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, and is not the assignee or designated representative of the injured party, then it does not have* [constitutional] *standing."* *Florida Dep't of Ins. v. Chase Bank of Tex., N.A.,* 274 F.3d 924, 929 (5th.Cir.2001).

85.     A defect in Article III standing is a defect in subject-matter jurisdiction that can be raised by the parties *or the court at any time, and a court is required to address such questions when they are present.* *Henderson at* 379 n. 5 (5th.Cir.2002). If, the court that rendered the prior judgment lacked jurisdiction, the judgment is void and has no *res judicata* effect. *Matter of Camp,* 59 F.3d 548 (5th Cir.[Tex.] 1995).

86.     Apart from this minimum constitutional standing mandate, even when
the plaintiff has alleged injury sufficient to meet the "case or controversy"
requirement, the plaintiff generally must assert his own legal rights and
interests, and cannot rest his claim to relief on the legal rights or interests of
third parties. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d
343 (1975).    FED. R. CIV. P. RULE 17 also requires that every action be
prosecuted in the name of the real party in interest.   Each and every plaintiff
in a lawsuit must show that he meets the requirements of standing on his
own. *Poe v. City of Humble, Texas,* 554 F.Supp. 233, 237 (S.D.Tex.1983).
A plaintiff does not have standing to sue in its own name to collect a debt
owned entirely by someone else, while holding no title, interest, or other
rights in anything else. *Shipley v. Unifund CCR Partners,* 331 S.W.3d 27,
29-30 (Tex.App.-Waco.2010, no pet.).   The plaintiff in a cause of action on a
promissory note must be the owner or holder of the note at the time of the
suit. *Jernigan v. Bank One, Texas, N.A.,* 803 S.W.2d 774, 775 (Tex.App.-
Houston[14th Dist.].1991, no writ) and *SMS Fin., L.L.C. v. ABCO Homes,
Inc.,* 167 F.3d 235, 238 (5th.Cir.1999).

87.     To determine which, if either, APPELLEE has legal standing in this
CASE and APPEAL to assert the fraudulent conveyance claim, assert
declaratory relief regarding subrogation rights to DFS'S AJ LIEN, or assert

any contractual defense to APPELLANT'S conversion claims and subrogation

interests, this Court must determine APPELLEES' separate standing not only

in this CASE and APPEAL but also in prior cases to determine which

judgments, if any, can be given *res judicata* affect.   Otherwise the Court

should remand for determination of material questions of facts related to

each APPELLEE'S individual legal standing in this CASE as well as in prior

cases that are also dependent on correct interpretation, clarification, and

enforcement of XXI'S PLAN and VFP'S PLAN and related discharge

injunctions as discussed in Section I *supra*.

**III.   IF THE JUDGMENT IN RAF'S & AAC'S DECLARATORY JUDGMENT SUIT IS NOT VOID, THEN IT SERVES AS *RES JUDICATA* THAT XXI'S CONVEYANCE TO APPELLANT WAS FREE AND CLEAR OF ANY LIEN; HOWEVER, AAC'S ACQUISITION OF THE UNDIVIDED 75% INTEREST IN THE 1½ SECTIONS IN 2001 VIOLATED THE BANKRUPTCY STAYS, AND AS SUCH, AAC HAD NO LEGAL TITLE TO CONVEY TO XXI AS CONSIDERATION FOR THE SETTLEMENT OF THE BANKRUPTCY ADVERSARY PROCEEDING, AND CONSQUENTLY, AAC HAD NO VALID BASIS TO SUBSEQUENLTY FORECLOSE THEREON, DFS'S AJ LIEN DID NOT ATTACH, AND TITLE REMAINS IN AAC'S GRANTORS**

88.   In response to Issue Four of APPELLANT'S BRIEF, APPELLEES' BRIEF

argues that even if the District Court erred in holding that 1) XXI'S PLAN

served to cut off DFS'S AJ LIEN as to property acquired by XXI post-

confirmation; 2) AAC held a superior purchase money lien; and 3) AAC's

non-judicial foreclosure of its subsequent deed of trust was upheld in RAF'S

& AAC'S DECLARATORY JUDGMENT SUIT which now serves as *res judicata*

to support AAC's foreclosure and title claim to a 75% undivided interest in THE 1½ SECTIONS. As APPELLANT'S BRIEF points out, AAC did not judicially foreclose on its superior vendor's lien. Again the parties and the Court fail to address several *elephants in the room.*

89. First, disregarding Section 1 *supra* and assuming *arguendo* that RAF'S & AAC'S DECLARATORY JUDGMENT SUIT is not a legal nullity and void *ab initio*, requisite to the District Court's holding that XXI's Special Warranty Deed[82] to APPELLANT was a fraudulent conveyance is a implicit finding by the District Court that such Special Warranty Deed to APPELLANT was not subject to a superior lien.

90. Under the Texas Uniform Fraudulent Transfer Act, "transfer" means disposing of or parting with an "asset". TEX. BUS. & COM. CODE §24.002(12). Property encumbered by a valid lean is not an "asset" under TUFTA. TEX. BUS. & COM. CODE §24.002(2)(A). *Yokogawa Corp. of America v. Skye Intern. Holdings, Inc.*, 159 S.W.3d 266 (Tex.App.-Dallas.2005). Since the District Court granted APPELLEES' request for declaratory relief that XXI's transfer to APPELLANT was a fraudulent conveyance under TUFTA, it could only have done so if the 75% undivided interest in THE 1½ SECTIONS was not encumbered by AAC's vendor and

---

[82] *See* Exhibit 70 attached.

deed of trust liens.[83]  If the judgment in RAF'S & AAC'S DECLARATORY

JUDGMENT SUIT is not otherwise a legal nullity and void *ab initio*, then it

must serve as *res judicata* that the 75% undivided interest in THE 1½

SECTIONS was not encumbered by AAC's vendor and deed of trust liens and

there is no issue in the CASE and APPEAL that AAC's non-judicial

foreclosure on its deed of trust could not have defeated DFS'S AJ LIEN of

record on such property.

91.    Second, after the District Court's judgment in the EQUIPMENT SUIT, it

is clear that ASA and AAC violated both XXI's and VFP's automatic

bankruptcy stays when AAC originally acquired 1) plaintiff's interest in a

pending partition suit in which ASA was a named defendant;[84] and 2) the

75% undivided interest in THE 1½ SECTIONS including personal property

owned by VFP in which XXI had a security interest that were subsequently

adjudicated to be fixtures in the EQUIPMENT SUIT as requested therein by

APPELLEES.[85]  Any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate,

and any act to create, perfect, or enforce any lien against property of the

estate, is a violation of the stay.  11 U.S.C. §362(a)(3) and (4).

---

[83] Also *see* footnote 48 *supra*.
[84] *See* Exhibit 68 attached.
[85] *See* PACER Doc. 42-54.

92.    APPELLEES produced an e-mail dated August 16, 2004 in discovery in 2006 that candidly admitted to Rabobank that AAC/ASA had acquired the 75% undivided in THE 1½ SECTIONS as *"leverage against the Veigel principals."*[86]    Although, ASA and AAC had actual knowledge that VFP owned personal property on THE 1½ SECTIONS which XXI held a security interest and which had filed a proof of No. 21 claim in VFP'S BANKRUPTCY CASE claims register, neither AAC, ASA, nor RAF ever sought to retroactively lift or modify the automatic stays in VFP's and XXI's bankruptcy cases to allow such acquisitions.

93.    Under Texas law and federal law, AAC's original title to the 75% undivided interest in THE 1½ SECTIONS is null and void *ab initio* and legal title remains with AAC's original grantors.  TEX. PROP. CODE §52.042; 11 U.S.C. §362; *York v. State* ___S.W.3d___,___(Tex. June 29, 2012)(NO. 09-0905) ("[a]*n action taken in violation of the automatic stay is void, not merely voidable*" if and until the bankruptcy court grants retroactive relief from the stay citing *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988) (per curiam)); *In re Atravasada Land & Cattle Inc.*, 388 B.R. 255, 279 (Bankr.S.D.Tex.2008) ("An attempt to transfer real property in the State of Texas in violation of the automatic stay is void, not

---

[86] *See* Exhibit 69 attached.

voidable"); and *In re Stoker,* 2010 Bankr. LEXIS 782,___(Bankr.S.D.Tex.2010) ("*Actions taken in violation of the automatic stay are void unless there is a showing that the automatic stay should be retroactively annulled.*" citing *In re Coho Resources, Inc.,* 345 F.3d 338, 344 (5th.Cir.2003).

94.    As such, not only did APPELLEES not have legal standing to seek declaratory relief in RAF'S & AAC'S DECLARATORY JUDGMENT SUIT that VFP's personal property became affixed to THE 1½ SECTIONS, AAC did not have legal standing in that suit as owner of the 75% undivided interest rendering the judgment in that suit null and void for lack of subject matter jurisdiction.   Furthermore, without valid legal title to the 75% undivided interest in THE 1½ SECTIONS, AAC's consideration for the settlement of the BANKRUPTCY ADVERSARY fails as AAC did not have any valid title to convey to XXI.   Such violation of the automatic stays and failure of consideration of the BANKRUPTCY ADVERSARY also provide grounds for civil contempt in XXI's and VFP's bankruptcy courts.   Even though the automatic stays were lifted upon confirmation, APPELLEES may still be held liable for violating both the orders imposing the stay and the order confirming the plan in a post-confirmation action.   *In re Sanchez.* 372 B.R. 289, 316 (Bankr.S.D.Tex.2007).

95.     More significant to this CASE and APPEAL, is that since AAC never acquired legal title from its grantors and did not have legal title to convey to XXI then non-judicially foreclosure upon, DFS'S AJ LIEN never legally attached to the 75% undivided interest as XXI never became vested in legal title thereto.     Therefore, the District Court's summary judgment, APPELLANT'S Issue Four, and APPELLEE'S related arguments are moot as legal title remains with AAC's original grantors as a result of AAC's violation of the stays rendering its original title null and void *ab initio*.

## IV.     APPELLEES' LACK LEGAL CAPACITY TO FILE COUNTERCLAIMS.

96.     APPELLANT'S BRIEF at footnote 46 raised the issue of APPELLEES' lack of legal capacity to bring any counterclaims.     In response, APPELLEES' dismissed their related cross-appeal and did not address the issue.     Then APPELLANT'S REPLY BRIEF at footnote 30 argued that the District Court erred in denying APPELLANT'S FED. R. CIV. P. RULE 12(c) motion to dismiss APPELLEES' counterclaims for fraudulent transfer and declaratory relief.

97.     The District Court ruled that "[b]*ecause Defendants are registered with the Texas Secretary of State, they are not barred from asserting their counterclaims against Plaintiff. ... The issue before the Court, however, is not whether Defendants are violating the Texas Finance Code, but whether Defendants may bring the counterclaim[s] presently before the Court. ...*

66

*Plaintiff cites no section of the Texas Finance Code, and the Court finds none, that states a violation of the Finance Code will bar the violating entity from maintaining an action, suit, or proceeding under Texas law. … Plaintiff has failed to prove that Defendants have 'failed to pay all taxes, penalties, and interest'.*" *See* PACER Doc. 83 at pages 2 - 3.

98.    The District Court erred in failing to require each APPELLEE to conclusively prove its legal capacity by showing it was never engaged in "banking", never held itself out or implied it was a "bank", never was required to be registered as a foreign financial institution, and that it had never filed false or inaccurate reports in obtaining it certificate of authority to do business in Texas as a foreign for-profit corporation and letter of good standing to rebut APPELLANT'S *prima facie* case that both APPELLEES lacked legal capacity as a result false and defective filings misrepresenting the true nature of APPELLEES' business in Texas.

99.    The fact that APPELLEES were registered to do business as foreign for profit corporations does not preclude APPELLANT from showing that such registration is defective and based on false representations and that APPELLEES had not paid related fees. *Coastal Liquids Transp., L.P. v. Harris Cty. Apprsl. Dist.,* 46 S.W.3d 880, 885 (Tex.2001) (even though Coastal had registered to do business in Texas, the District was allowed to

67

show Coastal lacked legal capacity because such registration was defective and related filing fees were not paid). As a matter of law, the District Court erred in holding that APPELLEES' registration and letters of good standing were conclusively determinative as to whether or not APPELLEES had legal capacity to bring the counterclaims.

100. The District Court also erred as a matter of law as APPELLANT'S motion to dismiss [PACER Doc. 41 at page 1] incorporated by reference the cite to TEXAS FINANCE CODE §201.102 [PACER Doc. 42-2 at paragraph 11]. TEXAS FINANCE CODE §201.102 requires out-of-state financial institutions to file form 309, and when applicable form 411, and pay respective filing fees of $750 and $150 with the Texas Secretary of State.[87]    Similar to the situation in *Coastal Liquids*, APPELLEES did not present any evidence that they ever filed either form 309 or 411 or ever paid the applicable filing fees with the Texas Secretary of State or regulatory fees provided by TEXAS FINANCE CODE §§12.105, 31.106, and 31.108 and annual assessments under 7 TEXAS ADMINISTRATIVE CODE §§3.36 (d) and 3.38 and related penalties which APPELLEES have avoided with their false and inaccurate state filings.

101. Moreover the District Court erred as, APPELLANT'S motion to dismiss [PACER Doc. 41 at pages 2 – 3] also cites TEXAS FINANCE CODE §32.008

---

[87] *See* Exhibits 76 and 77 attached hereto.

which makes §§9.201 and 9.051 of the TEXAS BUSINESS ORGANIZATIONAL CODE applicable to out-of-state individual's or entity's violation of the TEXAS FINANCE CODE provisions including registration and filing fees (§201.102), unauthorized banking (§31.004) by accepting "deposits" and engaging in "banking" as defined in §31.002, and implying one is a bank (§31.005).

102.    Pursuant to FED. R. CIV. P. RULE 12(d), when a FED. R. CIV. P. RULE 12(c) motion is made and matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under FED. R. CIV. P. RULE 56. In APPELLANT'S motion to dismiss [PACER Docs. 29 and 41] with supporting summary judgment evidence [PACER Docs 42-1 – 42-62] and reply [PACER Doc. 65] with supporting evidence [PACER Doc. 65-2] to APPELLEES' response [PACER Doc. 54] and summary judgment evidence [PACER Docs. 54-2 – 54-4], APPELLANT established a *prima facie* case for its defense that APPELLEES lacked legal capacity showing that APPELLEES continue to misrepresent and conceal the true nature of their business in Texas and filed demonstratively false and inaccurate reports with Texas authorities concerning their applications to do business in Texas and franchise tax filings and audits thereof.

103.  APPELLEES' registration as foreign for-profit corporations, letters of good standing from the Texas Comptroller and franchise tax audit miss APPELLANT'S points and does not rebut APPELLANT'S *prima facie* case that such are inaccurate and don't reflect reality of the true nature of APPELLEE'S business in Texas.  In order to rebut APPELLANT'S *prima facie* case, each APPELLEE claiming standing and legal capacity to assert a counterclaim needed to produce documentation for the Texas Department of Banking and/or the Texas Secretary of State that it filed SOS forms 309 and 411 with the appropriate filing fees which was approved along with proof of compliance and payment of annual regulatory assessments; or otherwise, provide documentation from Texas Department of Banking and/or the Texas Secretary of State that it was not and has never been a foreign financial institution, was not and has never been engaged in unauthorized banking or held itself out or implied that it is or was a "bank", and was not and is not required to be registered and regulated as a depository institution.

104.  It is undisputed that APPELLEES did not produce such necessary rebuttal evidence from the Texas Department of Banking and/or the Texas Secretary of State.  APPELLEES' contradicted and self-serving affidavits claiming that they are merely non-bank finance companies as they do not accept and hold "deposits" and thus are not engaged in the business of

unauthorized banking was not sufficient in the BANKRUPTCY ADVERSARY[88]

nor is it sufficient to conclusive show their legal capacity in this CASE.

105.  APPELLEES cannot cure their lack of legal capacity as APPELLANT

conclusively showed that APPELLEES accepted "deposits", hold themselves

out and/or imply to the public that they are a "bank" with the use of

Rabobank's trademark in advertising and on their letterhead, and cannot

deny that APPELLEES are not incorporated, chartered, or licensed as a

depository financial institution in any jurisdiction.

106.  Furthermore, in the context of APPELLANT'S motion to dismiss, it is

APPELLEES who should bare the burden of proof to show with summary

judgment evidence that there is no genuine dispute as to any material fact

that both APPELLEES had legal standing to bring their counterclaims.

Assuming *arguendo* that there are material facts determinative of

APPELLEES' legal capacity concerning the true nature of APPELLEES'

business in Texas and truthfulness and correctness of APPELLEES' filings

with state authorities that are in dispute, the District Court also erred in not

letting the jury determine such facts.  Determination as to whether or not a

party is required to be or is properly registered to do business is a factual

matter, and therefore not ordinarily capable of resolution on motion for

---

[88] *See* PACER Doc. 42 at paragraph 26 and PACER Doc. 42-44 at pages 11 – 15.

summary judgment. *Kutka v. Temporaries, Inc.*, 568 F.Supp. 1527, 1532 (S.D.Tex.1983).

## CONCLUSION

107. For the reasons stated by APPELLANT and herein, in order to protect its jurisdiction and judgment in this APPEAL as well as the jurisprudence of federal bankruptcy law and jurisdiction of bankruptcy courts, in the interest of justice, the Court must recognize that all prior judgments for APPELLEES including those in this CASE as well as APPELLEES' claims of title to property and rights and interest in pre-confirmation loan and securities agreements are legal nullities and void *ab initio* which cannot support *res judicata* or collateral estoppel in this CASE and APPEAL or any other.

108. As a matter of judicial economy and expediency, the Court should reverse and remand this CASE to the District Court with instructions that all prior judgments for APPELLEES as well as APPELLEES' claims of title and possession to XXI's Original Texas Properties and THE 1½ SECTIONS as well as all of XXI's, VFP's, and APPELLANT'S personal property, and APPELLEE'S claimed rights and interest in pre-confirmation loan and securities agreements are null and void.

109. Further, the District Court should be instructed to 1) order APPELLEES to provide and file appropriate releases of judgments, deeds of trusts, and

mortgages; and 2) order XXI's and VFP's bankruptcy court to reopen the respective bankruptcy cases to allow for clarification and enforcement of XXI's PLAN and VFP's PLAN and consideration of civil contempt remedies for APPELLEES' violations thereof by XXI, VFP, and other parties in interest, or otherwise, revoke the bankruptcy reference in order to allow the District Court to sit and consider such relief as a bankruptcy court; and 3) abate the CASE, if necessary, until resolution of the bankruptcy matters.

110.   Such instructions would allow for timely consolidation of all claims, issues, and parties associated with the void judgments, XXI's PLAN and VFP's PLAN, and violations of the discharge injunctions to be heard in a single and consistent forum with proper subject matter jurisdiction.

Respectfully submitted,

Steve Veigel, *pro se*

105 Quince Street
Hereford, Texas  79045
Telephone: (806) 281-1009
e-mail: SVeig@aol.com

73

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on all counsel of record designated below via First Class Mail on September 19, 2012.

Steve Veigel

Steven E. Clark
McDole & Williams PC
1700 Pacific Ave., Suite 1280
Dallas, Texas 75201

Barbara Whiten Balliette
William T. Reid, IV
Reid Collins & Tsai LLP
4301 Westbank Dr., Suite B230
Austin, Texas  78746

Clifford H. Walston
Farrar & Ball, LLP
1010 Lamar, Suite 1600
Houston, Texas 77002

Thomas C. Riney
Riney & Mayfield LLP
320 S. Polk Street
Amarillo, Texas  78101

## CERTIFICATE OF COMPLIANCE

This BRIEF does *not* comply with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 18,515 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and the statements required by FRAP Rule 29(c)(4) and (5) and Fifth Circuit Rule 29.2. However, in paragraph 31 of MOVANT'S MOTION for leave to file this BRIEF, MOVANT requested permission to file this extra-length BRIEF.

This BRIEF complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this BRIEF has been prepared in a proportionally spaced typeface using MS Word 2003 in 14 point Times New Roman font.

Dated: September 19, 2012

Steve Veigel